W. H. SHEARON v. TRAVIS HENDERSON, GUARDIAN, ETC.

1. Suit may be maintained on an obligation payable in Confederate notes by an executor, administrator, guardian or other trustee, for the use of the benificiary, but the defendant may reduce the amount to the *value* of the consideration of the obligation sued on upon alleging and proving such value.
2. *Lis pendens* is notice of the matters in litigation, but only such as appear in the pleadings.
3. It is error to instruct the jury that dealings between father and son are badges of fraud.
4. A precedent debt even barred by limitation may form a consideration for the conveyance of property, and if adequate in amount and the transaction be otherwise in good faith, the sale will be supported.
5. The fraudulent intent of the vendor in no way affects the title of the *bona fide* purchaser, and it is error to instruct the jury that the validity of a sale is dependent upon the intent of the vendor.

APPEAL from Lamar. Tried below before the Hon. A. H. Latimer.

On the seventeenth day of September, 1863, Samuel Hancock and Wm. H. Shearon executed their note, for property purchased at an administrator's sale, to W. B. Wright and L. Yates, administrators of the estate of John D. Thomas.

The note was not paid at its maturity, and on December 11, 1865, suit was brought against the makers of the note, Samuel Hancock and Shearon, by Richard J. Thomas, guardian of the minor heirs of the said John D. Thomas. In the subsequent proceedings the appellee, Travis C. Henderson, succeeded as guardian.

On April 9, 1867, affidavit and bond for attachment were filed, and on the eleventh of April, 1867, a levy of the attachment was made upon 359 acres of land. This land defendant Hancock had transferred to his sons, John M. and Martin H. Hancock, on the twenty-fifth of March, 1867. These vendees were made parties defendant.

The defendant, Samuel Hancock, pleaded general denial; that the note was given for property bought of W. H. Shearon at administrator's sale, and that defendant was surety; that the note, by the express agreement of the parties thereto, was payable in Confederate bills; that the property for which the note was given was worth, in coin, but one-sixth the amount for which the note was given; that the defendants had tendered the Confederate States bills at maturity, etc.

Subsequent to the levy of the attachment plaintiff amended and alleged that the sale of the land levied on was fraudulent, without consideration, and for the purpose of defrauding creditors, etc.

John M. and Martin H. Hancock answered, that they had bought and paid for the 'said land, had received possession of it from their father, Samuel Hancock, prior

to the levy of attachment, and that the purchase was in good faith, and that they had conveyed the land to one Louisa Hancock.

By amendment they set out the particulars of their purchase, and showed indebtedness to each from their father, liquidated by the transaction.

Shearon adopted the defenses of defendant, Samuel Hancock.

On the trial the court instructed the jury (touching the sale of the land) as follows :

"The suit of the plaintiff pending at the time of the sale made by Samuel Hancock to J. M. and Martin H. Hancock is constructive notice to them of the indebtedness of said Samuel Hancock to the plaintiff.

"Dealings between father and son, when the party conveying is heavily involved in debt, is suspicious, and is regarded in the eye of the law as a badge of fraud or a presumption of fraud."

The court refused to submit the question of "Confederate money" to the jury.

Verdict was rendered for the full amount of the note, and that the conveyance from Samuel Hancock to his sons, J. M. and Martin H. Hancock, was fraudulent.

Judgment was entered for the amount of the note and for sale of the property seized by attachment, and releasing defendant, Samuel Hancock, on his discharge in bankruptcy.

Motion for new trial was overruled, and the defendant appealed to this court.

The defendant, Samuel Hancock, went into bankruptcy on March 10, 1868. The plaintiff obtained orders from the United States Court in Bankruptcy to prosecute the suit to judgment.

Samuel Hancock was discharged under the bankrupt laws on November 1, 1869.

The other facts sufficiently appear in the opinion.

*S. B. Maxey*, for appellant, cited Smith v. Nelson, 34 Texas, 516; Miller v. Sherry, 2 Watt., 237; Carrington v. Brent, 1 McL., 167; Edmonds v. Crenshaw, 1 Mc-Cord, 264; Leland v. Wilson, 24 Texas; Wood v. Colvin, 5 Hill, 230; Catlin v. Jackson, 8 Johns., 546; Kent v. Roberts, 2 Story, 603.

*W. B. Wright* and *Hancock & West*, for appellees, cited Hamilton v. Pleasants, 31 Texas, 638; Trammell v. Philleo, 33 Texas, 395; Wright v. Linn, 16 Texas, 43; Briscoe v. Bronough, 1 Texas, 335; Gibson v. Hill, 23 Texas, 82; Green v. Banks, 24 Texas, 519; Edrington v. Rogers, 15 Texas, 188; Mosley v. Gilmer, 10 Texas, 397; Parks v. Atkinson & Chappell, 36 Texas, 16; Tutell v. Turner, 28 Texas, 777; Morgan v. Johnson, 15 Texas, 369; Hill v. Cunningham, 25 Texas, 32; 2 Story Eq., §§ 105, 106; 2 Vesey, 194; 2 Johns. Ch., 366.

OGDEN, J.—This is an action upon a promissory note given for the purchase of property at an administrator's sale in 1863. The first question presented in the record which requires notice is the defense that by an express agreement the note was to be paid in Confederate money, and therefore illegal and void. This defense has been held, in repeated decisions by this court, to be as a general rule a complete bar to an action. But an exception to this general rule has been recognized, when a party brings suit in a fiduciary capacity, and when the real parties interested cannot be chargeable with a participation in the illegality of the contract. This doctrine was clearly announced in Hamilton v. Pleasants, 31 Texas, 641, which has been closely followed in Trammell v. Philleo, 33 Texas, 395, and in Morgan v. Benson and several unpublished decisions.

Under the rule laid down and followed in those cases, an administrator or executor who sued as such, or other person suing in a fiduciary capacity, could maintain a suit and recover judgment in legal currency on a note or other contract payable in Confederate money, for the full amount of such note or other contract. It is believed this court has uniformly held to this rule since the close of the late war, whenever the question was properly presented for decision, excepting in the case of Smith v. Nelson, 34 Texas, 520, when the general rule, and not the exception, was recognized as the law ; but the court is now unanimous in the opinion that there is an error in that case, caused probably by an unintentional oversight of the character in which the plaintiff below brought that suit, and that the same should not be regarded as authority.

In view of the injustice which may result to parties who have purchased property at administrators' and executors' sales, and sales made by persons acting in a fiduciary capacity, with the distinct understanding and agreement that such contracts of purchase, etc., were to be discharged in Confederate money, and thereby were induced to agree to pay for such property a greater sum or price than it was worth in lawful money, this court, in the case of Thompson v. Bohannon, decided but a few days ago, so changed the rule heretofore adhered to, as to allow the defendant in such cases, under proper pleadings, to allege and prove the actual value, in lawful currency, of the property or other consideration for which the note or other contract was executed ; and to restrict the plaintiff in his recovery to the actual value thus proven.

On the trial of the case at bar, there was proof going to show that at the sale of property for which the note sued on was given, it was the understanding and agreement

that the note was to be paid in Confederate money ; and that in consequence the property brought a price greatly in excess of its actual value ; and no notice was taken of this fact in the charge of the court to the jury. But it is due to the court to say that the charge in this respect was in conformity with the former rulings of this court. It is believed that justice requires this case should be sent back for a new trial, that the jury may be properly instructed in this respect, in accordance with the rulings in Thompson v. Bohannon.

There is error in the second charge of the court to the jury, where it says, the suit of "plaintiff, at the time of the sale made by Samuel Hancock to J. M. & M. H. Hancock, is constructive notice to J. M. & M. H. Hancock of the indebtedness of Samuel Hancock." We think this is carrying the doctrine of *lis pendens* to an extent not authorized by the authorities. Where suit is brought for the recovery of, or in relation to, a specific property, or right in equity, that suit may operate as constructive notice to all the world of the claim set up in relation to the particular property or equity ; but such constructive notice is not to be extended beyond the immediate subject matter of the suit. (Edmonds v. Crenshaw, 1 McCord's Ch. R., 264 ; 2 Johns. Ch. R., 158.)

This suit was originally brought on a simple note of hand, and the suit most certainly could not operate as constructive notice of anything not set up or claimed by the plaintiff. At the time of the sale of the property in controversy by Samuel to J. M. and M. H. Hancock, there was no pretense of a claim for anything but the money due on the note, and particularly none upon the land sold, and we have been unable to discover any principle of law or equity which would prevent Samuel Hancock from selling the land, or J. M. and M. H. Hancock from purchasing, provided the sale was *bona fide*, and

for an adequate consideration. That sale might have been for the express purpose of raising funds to pay the note sued on. There can be no doubt that the parties had a right to sell and purchase the land in question at any time before the levy of the attachment, if the transaction was untainted by fraud.

We think the subsequent clauses of the charge also erroneous. The sale of property by the father to the son, or by the son to the father, cannot in itself be considered as a badge of fraud. That fact, in connection with the indebtedness of the father and other circumstances, might very properly have been submitted to the jury for their consideration in determining the question of good or bad faith. The father may have been involved, and may have sold to his sons in perfect good faith, notwithstanding they had full knowledge of his embarrassment, and, therefore, neither of these facts can properly be considered as badges of fraud.

The instructions also give too great a prominence to the intent of the father in making the conveyance to his sons. If the father was justly indebted to his sons at the time of the sale, and if they purchased, at full consideration, with the sole object and purpose of securing their debt, then it was quite immaterial whether they knew of his embarrassments or not, and it would also be immaterial what was the intent of the father.

It is an elementary principle that a person in failing circumstances may prefer one creditor to another, and may prefer relatives or sons to strangers. There can be no doubt that Samuel Hancock had full power and right to sell the land in controversy to his sons at the time he executed the deed, provided the sale was made *bona fide*, for a fair consideration paid, or made in liquidation of a previously existing debt, and the sale would be equally good and binding whether the debt was barred by limit-

ation or not. The only inquiry which need be made in that respect is, was there a pre-existing debt, and had it ever been paid?

The statute does not compel a party to accept the bene-fits which would arise from limitation unless he chooses so to do; and though a debt may have been barred for years, yet it may, under our statute, be revived by a sim-ple acknowledgment and payment or promise to pay in writing. The main questions for the jury in this cause were in relation to the intent of the parties in the sale of the land. If the sale of the land was made to J. M. and M. H. Hancock for the purpose of paying a pre-existing debt due from the father to the sons, and if in the pur-chase by the sons they paid an adequate consideration—and further, if that sale was made to the sons before the levy of the attachment, then their title is complete, beyond the reach of the plaintiffs below by means of this suit; and the intention of Samuel Hancock to hinder and delay his creditors, so far as this land is concerned, cannot af-fect the vested rights of the sons. Nor would the knowl-edge on the part of the sons that the father was in debt, and that the sale to them would hinder and delay credi-tors, affect their title, if their object in making the pur-chase was to protect their own interest and secure their debt.

But if the objects of the father and sons in making the transfer of the land were to cover up and conceal the real title, and thereby hinder and delay the creditors of Sam-uel Hancock, then the whole transaction was fraudulent, null and void, and the sons now have no right to complain of the verdict rendered by the jury. There is, however, an error in the verdict of the jury in finding for the plain-tiffs and against Samuel Hancock for the amount of the note and interest. His discharge in bankruptcy has freed him from all responsibility in relation to his former debts.

We do not propose to notice at this time the other questions presented in the plea of discharge in bankruptcy, since the questions already noticed must settle the rights of the parties now litigating. This appeal is brought here by J. M. and M. H. Hancock, and if upon a new trial the jury render the same verdict rendered on a former trial, that will settle the whole case so far as appellants are concerned. But should the jury on another trial find that J. M. and M. H. Hancock were purchasers in good faith, then the questions of bankruptcy will no longer have any prominence in the case.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.