## W. P. Hughes et al. v. Thomas Roper.

Parties—Practice in Supreme Court.—Objection for want of proper parties will not be noticed when first made in the Supreme Court.

2. Conveyance in fraud of creditors.—See facts held sufficient to support a verdict avoiding a conveyance.

3. Deed of gift.—A deed from a father to some of his children, to whom he is indebted. and from. them to others to whom there is none, may be, considered as one transaction, and to the extent of the second transfer, a deed of gift.

Appeal from Cass.    Tried below before the Hon. J. D. McAdoo.

July 25, 1870, W. P. Hughes and Reece Hughes, jr., for themselves and as next friend of Howell R., Bettie, Mary, and Benjamin F. Hughes, minors, brought suit against Thomas Roper and J. R. McKenna, sheriff, to enjoin the sale of certain lands levied on under an execution in favor of Roper for $1,900, and against Reece Hughes, sen.

Plaintiff claimed that the land, twenty-two tracts, containing in the aggregate about twenty-five thousand acres, and worth one dollar per acre, was their property, and conveyed to them by Reece Hughes, sen., for a valuable consideration, and that they had conveyed one-sixth thereof to each of the minors; that at the date of the levy of the execution Reece Hughes, defendant in execution, had no title or interest in the land whatever.

The deed from Reece Hughes, sen., to plaintiffs, and from them to the minors, were made exhibits, the first being as follows:

" The State of Texas, )
    " *County of Davis.*   }

" Know all men by this instrument, that for and in consideration of the sum of sixty thousand dollars to me in hand paid by William P. Hughes and Reece Hughes, jr., citizens of Davis county, the receipt of which sum so paid

is hereby acknowledged, I, Reece Hughes, senior, citizen of Davis county, State of Texas, have this day and do hereby bargain, sell, transfer, alien, and convey unto them, said William P. Hughes and Reece Hughes, jr., all my right, title, claim, and interest in and to the following mentioned and described tracts, parcels, and lots of land, to wit:  *  *  *  [here was a schedule of the lands conveyed;] to have and to hold unto them, the said William P. Hughes and Reece Hughes, jr., all the above mentioned and described tracts, parcels, and lots of land, and land certificates and warrants, both entire and fractional, together with all the rights, tenements, and hereditaments and appurtenances thereon situated and belonging, save and except my homestead, two hundred acres of land, with the brick house, my residence, in Davis county, Texas, and the appurtenances thereon situated and belonging, to be laid off as I may choose and select, (which two hundred acres of land with house and tenements is especially reserved from this conveyance,) unto them, their heirs, and assigns, forever free from me, my heirs, and assigns, and any persons claiming the same by, through, or under me. It is the intent and meaning of this instrument that I hereby convey unto them, the said William P. Hughes and Reece Hughes, jr., as above expressed, all and every tract, parcel, and lot of land now claimed and held by me by deed, patent, bond, certificate, either filed and located and unlocated, and by instrument of any nature whatsoever, whether herein specially stated or otherwise.

I also hereby transfer and assign unto the said William P. Hughes and Reece Hughes, jr., all claims by note account and otherwise due and owing, me as follows, to wit: The following notes: [here is list of notes and accounts] hereby conveying to them, the said William P. Hughes and Reece Hughes, jr., all the above claims and all others now in the hands of attorneys and other parties for collection; and I also hereby bargain, sell, and transfer unto

them, the said William P. Hughes and Reece Hughes, jr.
all my live stock, to wit:  *  *  *  *  *  *  except my
saddle pony, claimed by me.

" In testimony whereof, I hereunto sign my name and
affix my seal scroll, being used as seal this 13th day of
August, A. D. 1870.

" REECE HUGHES.   [SEAL.]

" Test:
     " JNO. T. MOSLEY,
     " JNO. TRATTER."

Defendant, Roper, answered, that pending the suit by
Roper against Reece Hughes, sen., for a large amount of
money for cotton sold, hire of negroes, work and labor
done, Reece Hughes, sen., for the purpose of hindering,
delaying, and defeating his creditors in the collection of
his just debts, had conveyed all his lands and other prop-
erty, worth $100,000, to the plaintiffs, including the lands
levied on; that the suit so pending against Reece Hughes,
sen., was instituted to the November term, 1860, and was
prosecuted to final judgment November, 1870, for $1,997,
gold, and costs, under which judgment the levy sought to
be enjoined was issued; that the plaintiffs were, at the date
of the deed to them, very young and without means, save
as furnished them by their father, Reece Hughes, sen., and
that they well knew of Roper's claim; that the convey-
ance was void as against his (Roper's) debt, and as to him
fraudulent.

McKenna, the sheriff, answered, that in default of a levy
furnished by Reece Hughes, sen., defendant in execution,
the land levied on had been pointed out to him by the
attorney of Roper, plaintiff in execution.

By amendment, plaintiff averred that that purchase was
on 13th August, 1870, prior to the judgment against their
vendor, which was rendered November, 1870; that plain-
tiffs and Howell R. Hughes, one of the minors, were
children of Reece Hughes, sen., by his first wife, who

died in 1853, leaving no debts and an estate in lands of $150,000, one hundred slaves, and $30,000 in gold, besides a large amount of farm stock and supplies; that the hire of the negro slaves until emancipation, and the gold on hand, had been appropriated by Reece Hughes, sen.; that the lands had been bought with the separate means of their mother, and that the said heirs of their mother had a just claim to her community interest in the community property owned at her death, part of which was levied on, and to the half of the gold, and to the hire of the slaves, and half of the rents; that to satisfy such debts, Reece Hughes, sen., had conveyed his interest in said lands; that the *three* younger children—Bettie, Mary, and Ben. F. Hughes— were not so much interested, save by the gift of W. P. and Reece Hughes, jun.; that the second coverture of Reece Hughes began in the fall of 1853 and ended in 1869, and that some of the lands levied on were of the community of the second marriage, but that it was subject to the prior equity of the children of the first marriage; that the equitable interest in said lands in plaintiffs and Howell R. Reece, children of the first marriage, was prior to the existence of Roper's claim, upon which judgment was had; that the levy was excessive, and made upon improved lands, when unimproved and wild lands ample in value existed belonging to plaintiffs, and that the levy included the homestead of plaintiff, W. P. Hughes; that Roper had full notice of their rights before he caused the levy to be made; that a sale would encumber the title of plaintiffs and of the minors, and result in great and expensive litigation and in irreparable damage, &c.

Roper rejoined that the debt, matured into judgment, was incurred by Reece Hughes, sen., for necessary supplies for and about the farms and business of the community estate under the control of said Reece Hughes, sen., and that the property of said community was liable to him, Roper. As to the charge that the levy was excessive, he replied

that he had applied to the defendant in execution for a levy, and that owing to the cloud cast by Hughes, sen., by his said deed to his children, the property would not sell for much, and a greater levy was thereby a necessity to make his money.

On the trial plaintiffs read the two deeds described in their pleadings; an instrument of date 23d March, 1853, signed by Reece Hughes, sen., purporting to be a schedule of his and his deceased wife's community property, consisting of slaves and other personal property; the execution and levy; and by Reece Hughes, sen., proved that the schedule read in evidence was prepared soon after his first wife's death; that it included none of the real estate of the community; gave a list of lands owned by them at her death; that there was some cash on hand not included in the schedule; that after her death her separate property, the community, and his own property, was all kept and worked together, no separate account of proceeds having been kept; that his second marriage was on 28th November, 1853; his second wife had a separate estate, which was kept apart a year or two, and then, her "children" coming of age, took much of it off; that his first wife's separate estate and one-half of his and her community estate consisted of about forty hands, and fifteen or sixteen slave children, some horses and mules, and about fifty cattle, which, with the lands not mentioned, was worth about $90,000; that the horses, mules, and slaves were all used and managed by him together, many of them worn out or dead, and some few of them were included in the transfer to his children; that he kept and used the slaves, and many others that were purchased, until they were emancipated; that those belonging to his first wife and one-half of their common property was worth about $150 per annum to the hand, or about $16,000 a year; that the expense of keeping the fifteen or sixteen small negroes was worth about $30 per head per

year, and as he was his own doctor, his doctor's bill was not more than $50 per year; that from the death of his first wife until emancipation was about twelve years; that proceeds of the slaves and plantation was invested by him in lands and slaves, and he considered that it was purchased mostly with the proceeds of his first wife's separate and community estate, though there had been no partition; that when his first wife died, he did not owe a dollar; that he never was in debt; that he did not separate his second community from the other property, but kept it all together; that he maintained and educated his children, and gave W. P. Hughes and Reece Hughes, jr., a good education; sending the younger off several years to college, and that he made no charge against them, and never expected or intended to, but he made no settlement with them until by the *deed in controversy;* that the aggregate proceeds of his first wife's property and one-half of his first wife's community was worth about $6,000 a year, but during the four years of the war it was worth a much less amount; that he had made no advance to his children, except a trifling amount from time to time, not taken into account; that his second wife died in 1868, and that he considered his transfer of his property to his sons in good faith; that all the lands levied upon, except 640 acres of his own head-right and about 4,000 acres of the Burleson league, was purchased after his second marriage.

Defendants read in evidence petition and exhibits in the case of Roper v. Reece Hughes, sen., as pleaded; the judgment rendered in said case; contracts between Roper and Hughes, basis of the action of Roper v. Hughes.

The verdict was: "We, the jury, find a verdict for the defendants; also subject the property of Reece Hughes, senior; also the community property of the second coverture for the said defendant's debt."

Upon this verdict, judgment was rendered. Motion for new trial was overruled, and plaintiffs appealed.

The assignments of error sufficiently appear in the opinion.

*Penn & Todd*, for appellants.

1. No decree could be entered, because the parties at interest were not parties to the suit. (Record, Hughes' testimony; 2 Story's Eq. Jur., sec. 1526.)

2. The claim of Roper, though pending in suit, was unliquidated, and not merged into judgment. No lien was sought therein, nor was any attached to such a claim. (Briscoe *v.* Bronaugh, 1 Tex., 333; Lee *v.* Salinas, 15 Tex., 495; Van Hook *v.* Walton, 28 Tex., 76.)

3. Admitting all the parties were valid creditors of Hughes, he had a right to prefer, unless fraud be shown, which was not. (Sydnor *v.* Roberts, 13 Tex., 598; Edrington *v.* Rogers, 15 Tex., 188; Wright *v.* Linn, 16 Tex., 42; Baldwin *v.* Peet, 22 Tex., 708; Van Hook *v.* Walton, 28 Tex., 76; Weisiger *v.* Chisholm, 28 Tex., 780.)

4. Hughes had the right to pay a community debt against either wife, there being no administration. (Jones *v.* Jones, 15 Tex., 148; Burleson *v.* Hancock, 28 Tex., 83.)

5. The verdict and charge were clearly insufficient and against evidence. (Allen *v.* Brown, 11 Tex., 520; Willis *v.* Lewis, 28 Tex., 186.)

*Reagan, Goodrich & Gooch*, also for appellants.
We submit:

1st. That the conveyance of the property described in the deed from Reece Hughes, sen., to W. P. and Reece Hughes, jun., is good on its face, and contains nothing in itself without proof *aliunde* which would authorize a court to set it aside as fraudulent.

2d. The statement of facts shows that there was no attempt made to show by proof *aliunde* the record that that conveyance was in any respect fraudulent, and the proof is full that it was made fairly, publicly, and honestly, for

a fair consideration, and in satisfaction of a liability older than that of Roper, and that that conveyance is good as an assignment to preferred creditors. It is not sufficient to invalidate an assignment that it prefers one or more creditors, because this the creditor has a right to do; nor is it a sound objection to an assignment that it operates to hinder and delay creditors, for this is the usual and almost invariable consequence of all assignments. (Bailey *v.* Mills, 27 Tex., 437; Baldwin *v.* Peet, 22 Tex., 714–716.)

3d. Roper's judgment against Reece Hughes, sen., was against him as an individual on a simple contract, and is not against these appellants, his children, either by his first or second marriage, and gives no lien or right of execution on their property. The mothers of each of these sets of children were dead, and their respective rights were vested in their heirs before this judgment was rendered. Their title under the two deeds is *prima facie* good. If it be said this judgment was rendered on an indebtedness contracted by Reece Hughes, sen., for the benefit of marital communities of which he was a member, then he and his separate part of the community estate was liable for his part of this indebtedness, and he was a necessary party to the proceeding to dissolve the injunction sued out against Roper, no reason being assigned which would excuse appellees from making him a party; and as the pleadings present questions which involved the respective rights and liabilities of Reece Hughes, sen., and of his children by both marriages, on the motion to dissolve the injunction, either Roper, the defendant in the injunction suit, or the court, on its own motion, ought to have made him a party. It is certain that, if the conveyances to his children were not valid, both he and they were materially interested in the subject matter and object of the motion to dissolve the injunction in this case; and all persons materially interested in the subject matter or object of the suit, if known, ought to be made parties. (Calvert on

Parties, ch. 1, sec. 1, p. 11; Story's Eq. Plead., sec. 76a; Robson *v.* Osborn, 13 Tex., 299, 305.) And all parties in interest to be affected in any way by the decree or judgment sought, if known, ought to be made parties defendant or plaintiff in the suit. (Denison *v.* League, 16 Tex., 408; Allison *v.* Shilling, 27 Tex., 450.)

4th. The verdict of the jury subjects only the separate property of Reece Hughes, sen., and the community property of his second marriage to the satisfaction of Roper's judgment. But there is no finding and designation of what portion of the property which had been levied on is of the separate property of Reece Hughes, sen., or of the community of his second marriage, and no finding which will enable the court to determine by its judgment what portion of the property, if any, would be subject to Roper's levy. And the judgment of the court does not ascertain or attempt to ascertain and designate what is the separate property of Reece Hughes, sen., or the community property of his second marriage, or what part of the property levied on was the separate property of his second wife and her heirs, or what part of it was the community property of the first marriage, so as to designate the part of the property not subject to Roper's levy, or to sell in satisfaction of his judgment. And the judgment of the court undertakes to annul the conveyance from Reece Hughes, sen., to W. P. and Reece Hughes, jun., without any finding of a fraudulent conveyance, except the general verdict, and without any proof of fraud in the conveyance. But it does not attempt to annul or impair the force and effect of the conveyance from W. P. and Reece Hughes, jun., to the four minors of three-fourths of this same property. And while the judgment leaves three-fourths of this property with the legal and equitable title in these minors, it at the same time seems to have intended to dissolve the injunction as to all of it, and to subject it all to levy and sale to satisfy Roper's judgment. A court of equity surely can-

not so act. The court cannot look to the evidence on which the verdict was found, in order to determine what judgment to render. (Claiborne *v.* Tanner, 18 Tex., 78.) And the judgment of the court must conform to the verdict of the jury. (Bennett *v.* Butterworth, 11 Howard, 675; Menard *v.* Sydnor, 29 Tex. 257.)

5th. We think it clear that the evidence did not warrant the verdict of the jury or the judgment of the court; and that the judgment rendered is not warranted by the verdict; and that the court erred in overruling the motion for a new trial.

*Samuel F. Moseley,* for appellee, cited Ballentine *v.* Beall, 3 Scannon, 205; Bump on Fraudulent Conveyances, 553; Story's Equity Pleading, 237, 238, 542, 543; Pas. Dig., arts. 4641, 4642, 4646, 4647, note 1053; Brackett *v.* Devine, 25 Tex. Supp., 194; Tucker *v.* Brackett, 28 Tex. 336; Moke *v.* Brackett, 28 Tex., 443; Green *v.* Banks, 24 Tex., 514, 518; Gibson *v.* Hill, 23 Tex., 82; Howerton *v.* Holt, 23 Tex., 51; Baldwin *v.* Peet, 22 Tex., 708; Linn *v.* Wright, 18 Tex., 337; Smith *v.* Boquet, 27 Tex., 512; Van Hook *v.* Walton, 28 Tex., 59; Earle *v.* Thomas, 14 Tex., 592; Mosely *v.* Gainer, 10 Tex., 397; Baker *v.* O'Connor, 25 Tex., 226; Reynolds *v.* Lansford, 16 Tex., 290.

GOULD, ASSOCIATE JUSTICE.—A sufficient answer to the objection that Reece Hughes, sen., ought to have been made a party, is found in the fact that the record does not show that the question was raised in the court below. Objections for want of parties come too late when made for the first time in the appellate court. (Shelby *v.* Burtis, 18 Tex., 648.)

It may be added that the point is not embraced in the assignment of errors.

The verdict in favor of defendant being in effect a finding that the conveyance under which plaintiffs claimed

was fraudulent as to Roper, cannot be said to be either without or against evidence. The instrument itself contains badges of fraud sufficient to justify the verdict, and the evidence discloses circumstances tending to the same conclusion. The conveyance was evidently designed to embrace all of the property of Reece Hughes, sen., subject to execution. The exception of his homestead of two hundred acres, and of his saddle pony, if it has no other significance, at least shows that the idea of property by law exempt from execution was present to the mind of the grantor. With these exceptions, the conveyance embraced not only all his lands and stock, but a large number of accounts and notes, many of them in process of collection, and was unusual in its character. The conveyance by the grantees on the same day of two-thirds of the entire property just received from their father to their younger brother and half brothers, a conveyance admitted to be in part at least a gift, is not without significance. The two conveyances bear the marks of one transaction, the result of which is that the father indirectly conveys property to his younger children by way of gift. The suit for Roper's debt was then pending, and was reduced to judgment in the month of November following the August in which the conveyance was made. All these are badges of fraud; that is, evidence of fraud—means of establishing a fraudulent intent. (Bump on Fraud. Convey., 78, *et seq.*) They are sufficient to authorize the jury to infer that the conveyance was not what it is claimed to have been, an honest preference of his own children as creditors.

It is urged that the verdict and judgment are both defective, in failing to designate what part of the property levied on is the separate property of Reece Hughes, sen., and what part the community of the second marriage. A brief statement of the pleadings will show that this complaint cannot avail appellants.

Appellants enjoined the sale of certain lands claimed by

them under a conveyance from their father, and levied on under an execution against him in favor of defendant. Appellee answered, alleging the conveyance to be fraudulent. By an amended petition, plaintiffs attempted to set up equitable ownership of the lands conveyed prior to the conveyance. The facts stated, however, were that the lands were purchased with the separate funds of their deceased mother, or community funds of the first marriage. These averments showed that Reece Hughes, sen., was at least part owner of the lands levied on, unless divested of his interest by the conveyance. The general verdict of the jury for the defendant settled the real issue of the case, viz, that the conveyance was fraudulent as to Roper. The verdict proceeded, however, to subject to Roper's execution "the property of Reece Hughes, sen., and the community property of the second coverture," and the judgment vacates the conveyance and dissolves the injunction only as to the separate estate of Reece Hughes, sen., and the community of the second marriage. We think that all of the verdict, except the general finding, might have been treated as surplusage, and that the appellee might have claimed a dissolution of the injunction in full. It would seem that this part of the verdict was induced by a charge of the court founded, doubtless, on an amended answer of appellee seeking affirmative relief. The only practical effect of this part of the verdict and judgment is that it gives the appellants the benefit of a partial perpetuation of the injunction, to which they were not entitled. When it is added that nowhere, either in their pleadings or evidence, do they furnish any data for distinguishing the separate and community estates, it would seem that this uncertainty is no error of which they can complain.

The assignment objects that the charge as given was defective. It does not appear, however, that any instructions were asked by appellants.

The judgment is affirmed.

AFFIRMED.