No. 2351.

HYMAN BLUM v. BENJAMIN McBRIDE.

1. FRAUDULENT CONVEYANCE.—A conveyance of land by a parent engaged in the mercantile business was made to her book keeper, who was her son, who knew the condition of her business; that she was insolvent at the time she made the deed, unable to meet her debts as they fell due, and with assets less than her indebtedness. Under this condition of affairs the deed was made, and the son gave his note for deferred payments, the last of which was paid, and also a balance due the son from the mother was settled, in notes and accounts of the latter, and this after attachments against the mother's property were levied on the land. It was sold under those attachments, and in a contest between the purchaser at foreclosure sale and the son, _held:_

(1) The natural and ordinary result of the transaction was to withdraw the land from the reach of creditors; this the parties must be held to have intended, with a view of hindering and delaying creditors. Had the land been conveyed in satisfaction of a pre existing debt, the conclusion might be different.

APPEAL from Hopkins. Tried below before **J. L. Whittle,** Esq., Special Judge.

*Crawford & Garrison* and *Leach & Templeton,* for appellant.

*B. W. Foster* for appellee.

STAYTON, ASSOCIATE JUSTICE. This action was brought by the appellee to remove cloud from title to about one hundred acres of land, which he claims through a deed made to him by his mother, E. J. McBride, of date January 12, 1884. Leon, Sylvain and Hyman Blum were made defendants, but all except Hyman Blum disclaimed, and he claimed title to the property under three deeds made to him by the sheriff under sales made under judgments against E. J. McBride, foreclosing attachment liens. The debts on which these judgments were obtained, existed at the time the mother of the appellee made the conveyance to him, and it was claimed by the defendant that the conveyance was made with intent to hinder, delay and defraud the creditors of his mother. Some questions were raised in the court below as to the sufficiency of the pleadings of the appellee, but in view of the pleadings of the appellant and of the facts proved, it is not necessary to consider the questions raised, which go only to matters formal in character. The pleadings of the appellant set out very fully the facts on which he claims that, as to him, the title of the appellee is invalid; assert title in himself and pray judgment for possession of the land, for rents, and that the cloud on his title, caused by the deed under which appellee claims be removed. There was a judgment rendered in favor of appellee in accordance with the prayer of his petition.

It appears from the testimony of the plaintiff himself, that his mother had carried on a mercantile business for several years prior to the time that she executed the deed under which he claims; that he was her bookkeeper, salesman and business man for four or five years prior to the time the deed to him was executed; that he was familiar with her financial condition and knew fully the extent of her liabilities and her assets. He states that, at the time the deed was made to him, his mother was indebted to L. & H. Blum one thousand eight hundred dollars, to R. A. Brown two thousand dollars, to Willis & Brother two thousand dollars, to Carter Brothers & Co. two thousand dollars, to Weaver, Whitworth & Fescue one thousand dollars,

to appellee one thousand dollarrs, besides other small debts. The debt to L. & H. Blum and some others were due about January 5, 1884. The assets of Mrs. McBride at the time she made the deed to appellee, according to his statement, consisted of goods in stock amounting to about four thousand dollars, notes and accounts to about four thousand dollars, land and town lots, besides homestead, all valued at one thousand two hundred dollars or one thousand five hundred dollars, the tract in controversy being a part of this.

He further stated that his mother was unable to pay her debts matured at the time she conveyed to him, and that some time in the same month the conveyance was made, he and his mother went to Galveston, and that a part of their business there was to get an extension on the indebtedness of his mother to Galveston houses; that a statement of his mother's assets and liabilities was made, while there, to the house of Leon & H. Blum, from which it was made to appear that the assets amounted to nineteen thousand nine hundred dollars, and the liabilities to nine thousand dollars. This statement was made on January 16, 1884.

For the land in controversy, the appellee agreed to pay to his mother the sum of eight hundred dollars, for which he executed two promissory notes in equal sums, one due January 1, 1885, and the other June 1, 1885. These notes were held by Mrs. Mc-Bride until the first one maturing became due, when one was paid in cash, and the other one settled by a counter claim, which appellee had against his mother as the administratrix of the estate of his father, as an heir. The one thousand dollars due to the appellee by his mother, at the time she conveyed the land in controversy to him, was not paid until some time in October, 1884, when attachments had been levied upon her property by several creditors, when the entire indebtedness to him, then amounting to one thousand eight hundred dollars, was settled with notes and accounts due the mother in her mercantile business.

There is no controversy as to these facts, and from them, considering the amount of liabilities and the value and character of the assets, it must be held that Mrs. McBride was insolvent at the time she made the conveyance to her son, and not only so in the fact that she was unable to meet her obligations as they fell due, but in the further fact that her assets were insufficient to pay her debts. These facts lead to the further conclusion

that the appellee knew that his mother was insolvent at the time he executed the notes to her and took a conveyance of the land Much of his mothers indebtenness was past due, and her cred itors entitled to and demanding their money, and the appellee must have known that the effect of the conveyance to him would be to withdraw the property from the reach of her creditors and to deprive her of the right to collect a part of its price for nearly one year and the residue for nearly a year and a half. This being the natural or ordinary result of such a transaction the parties to it must be held to have intended it, and to have entered into it with intent to hinder and delay, if not to defraud creditors. If it appeared that the land was sold by the mother to her son in satisfaction of an existing debt, the conclusion would be different, but the transaction excludes any supposition of such a fact, for the indebtedness to the appellee continued until settled after attachments had been levied on his mother's property, and by his notes he obligated himself to pay to her the purchase money for the land at a future day. We have not deemed it necessary to consider the facts that the notes executed by the appellee for the land remained in the hands of his mother until they were paid, and that before that time creditors had commenced proceedings to subject the land to the payment of the debts due.

We are of the opinion that the judgment of the court below should have been in favor of the appellant, and it will be reversed and here rendered in his favor for the land in controversy and all costs incurred in the district court and in this court.

*Reversed and rendered.*

Opinion delivered November 8, 1887.