**TEXAS SAND COMPANY et al.,
Petitioners,**

v.

**Donald L. SHIELD et al., Respondents.**

No. A–9628.

Supreme Court of Texas.

July 8, 1964.

Cofer, Cofer & Hearne, Austin, for petitioners.

Snodgrass, Smith, Rose & Finley, San Angelo, H. O. Woodward, Coleman, for respondents.

SMITH, Justice.

This suit was instituted on February 28, 1959, in the District Court of Coleman County by Respondents, Donald L. Shield, Leona Shield Montgomery, Charles L. South, James W. Dibrell, Josephine Dibrell Jobe, Elizabeth Dibrell, Joseph B. Dibrell, Jr., John F. Petty and James Robert Petty, hereafter referred to as plaintiffs, against Petitioners, Texas Sand Company, a corporation, Shield Oil and Gas Company, a corporation, Bridwell Oil Company, Elgean Shield and wife, Flora Shield, Richard Shield and wife, Sylvia Shield. Elgean C. Shield, F. Craig Morton, Otto Reynolds, H. & R. Drilling Company and John Hancock Mutual Life Insurance Company, hereafter referred to as defendants. Defendants Morton, Reynolds and H. & R. Drilling Company filed disclaimers.

Plaintiffs went to trial upon their First Amended Original Petition, wherein it was alleged that two conveyances made by defendants of a tract of land containing approximately 2,031 acres "were merely sham transactions with no intention to pass title to the Grantees therein, and the Grantors therein had no intention that such instruments should become effective as a conveyance of the properties described therein." In the alternative, plaintiffs alleged that the first conveyance in question was made "with the intent to hinder, delay and defraud [plaintiffs] of and from the collection of their judgment debt." Plaintiffs prayed that the conveyances in question "be adjudged fraudulent and void as against plaintiffs, and that same be set aside and held for naught, that plaintiffs' judgment lien be foreclosed against the property conveyed and that such property be sold for the satisfaction of the judgment of plaintiffs."

The defendants pleaded several affirmative defenses to the suit. However, we are concerned only with the pleaded defenses that the plaintiffs' suit, filed on February 19, 1959, to set aside the deeds, dated March 1, 1954, and March 17, 1954, was barred by the Texas four-year statute of limitations, Article 5529,[1] Vernon's Annotated Civil Statutes. The defendants further pleaded that they had peaceable and adverse possession of the 2,031-acre ranch for three years prior to February 19, 1959, the date of the filing of this suit. In regard to this latter plea, the defendants take the position that a deed, void because it is in fraud of creditors, is sufficient to support limitation title under the Texas three-year statute of limitations, Article 5507,[2] Vernon's Annotated Civil Statutes.

The case was tried to the Court with the aid of a jury, but at the close of all of the evidence, the defendants filed a motion for instructed verdict, alleging as grounds therefor that (1) under the undisputed evidence, the suit was barred, as a matter of law, by the four-year statute of limitations, Article 5529, supra; and (2) as a matter of law, plaintiffs' suit was barred by the Texas three-year statute of limitations, Article 5507, supra.

The trial court overruled defendant's motion for instructed verdict and submitted special issues to the jury.

The jury, in answer to special issues, found: (a) that the first conveyance in question was executed with the intent to hinder, delay and defraud plaintiffs in the collection of their debts; (b) that the parties to the deeds did not intend that such deeds should be effective as conveyances of the properties therein described; (c) that at the time of the execution of the first deed in question, the title of record

---

1. "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

2. "Suits to recover real estate, as against a person in peaceable and adverse possession thereof under title or color of title, shall be instituted within three years next after the cause of action accrued, and not afterward."

in the name of the defendant, Elgean Shield, to the land in controversy was not held for the use and benefit of his wife, Flora Shield; (d) that the defendant, Texas Sand Company, together with its successors in title, had not held peaceable and adverse possession of the 2,031-acre tract of land for three years prior to the date this suit was instituted; (e) that both deeds in question were not based upon a substantial and valuable consideration.

Based upon the jury verdict, the trial court rendered judgment for plaintiffs, set aside the two conveyances, held that plaintiffs had a valid judgment lien against the land in question (subject to the rights of certain parties), and foreclosed the plaintiffs' judgment lien. The Court of Civil Appeals for the Eleventh Supreme Judicial District at Eastland, Texas, has affirmed. 367 S.W.2d 88. We affirm the judgments of both courts.

The facts are these: On March 1, 1954, the defendants, Elgean Shield, his wife, Flora Shield, and Shield Oil & Gas Company, conveyed the land in question, among other properties, to the defendant Richard Shield. By instrument dated March 17, 1954, the defendants, Richard Shield and wife, conveyed the land in question and all other properties conveyed to them on March 1, 1954, to the defendant, Texas Sand Company, a corporation organized by Elgean Shield. Both of these conveyances were recorded in Coleman County on April 5, 1954. It is these two conveyances which the plaintiffs are attacking in the present suit as being "sham transactions" which were allegedly given with the intent to defraud plaintiffs from the collection of their debt. In order to understand the basis of the plaintiffs' allegations, it is necessary to set out the details of an earlier suit between these parties.

Prior to 1952, the defendants, Elgean Shield and Shield Oil & Gas Company, were indebted to plaintiffs. This indebtedness was the subject matter of a lawsuit which was heard in the 83rd District Court of Jeff Davis County, Texas, and on July 26, 1954, plaintiffs recovered judgment against these two defendants in the amount of $45,468.51. An abstract of this judgment was filed for record in Coleman County, Texas, on September 7, 1954, and thereafter duly recorded. On appeal to the Court of Civil Appeals, the judgment for the Eighth Supreme Judicial District at El Paso, Texas, affirmed this judgment in favor of plaintiffs. All rights of appeal to this court were fully exercised and the judgment became in all things final.

On June 18, 1956, execution was ordered on the judgment. On June 20, 1957, the execution was returned *nulla bona* by the sheriff of Coleman County, Texas. (In its opinion in the present case, the Court of Civil Appeals erroneously stated June 20, 1959.)

In the present case plaintiffs contend that the two conveyances in question were executed on the part of defendants with the intent to hinder, delay and defraud plaintiffs from the collection of this judgment.

We shall first consider the defendants' contention that there is no evidence to support the jury's findings that the conveyance of March 1, 1954, from Elgean Shield and wife to Richard Shield, was made with the intent to hinder, delay and defraud the plaintiffs in the collection of their debt. We overrule the defendants' contention.

First, this conveyance was made just prior to the trial of the case in Ft. Davis in which the plaintiffs were seeking a money judgment against the defendant Elgean Shield. This court has held that the existence of pending suits against an indebted vendor at the time of a transfer alleged to be fraudulent is a sign of fraud. See Briscoe v. Bronaugh, 1 Tex. 326 (1846). The record further discloses that the transfer of March 1, 1954, purported to cover not only the 2,031 acres in dispute, but also *all* of the grantor's property, both real and personal, except his homestead. It is a badge of fraud when a debtor transfers

all of his property subject to execution. As stated by this court in Hughes v. Roper, 42 Tex. 116:

> "* * * The conveyance was evidently designed to embrace all of the property of Reece Hughes, sen., subject to execution. The exception of his homestead of two hundred acres, and of his saddle pony, if it has no other significance, at least shows that the idea of property by law exempt from execution was present to the mind of the grantor. With these exceptions, the conveyance embraced not only all his lands and stock, but a large number of accounts and notes, many of them in process of collection, and was unusual in its character. * * * All these are badges of fraud; that is, evidence of fraud—means of establishing a fraudulent intent. (Bump on Fraud. Convey., 78, et seq.) * * *"

The grantee of the conveyance in question was the son of the grantor. While evidence of a blood relationship between the parties in itself does not conclusively show fraud, such relationship may be of importance when coupled with other circumstances that tend to show fraudulent intent. See Shearon v. Henderson, 38 Tex. 245, 246 (1873); Hughes v. Roper, supra; Blum v. McBride, 69 Tex. 60, 5 S.W. 641 (1887). The recited consideration for this conveyance to Richard Shield, who was a college student at the time, was "the sum of Ten Dollars ($10.00) and other good and valuable considerations to us—paid by Richard Shield—and the love and affection which we bear toward our son." The deed also recited as consideration the assumption by Richard Shield of a stated indebtedness in the amount of approximately $92,000.00. The jury found in answer to special issues that both the deeds of March 1, 1954, and March 17, 1954, were *not* based upon a substantial and valuable consideration, and that the property described in such deeds had more value than was reasonably sufficient to pay all just debts, the payment of

which was assumed in said deeds. The defendants have not brought forward to this court any point attacking these jury findings. From a review of the entire record, this court cannot say, as a matter of law, that there is no evidence to support the jury's findings that the conveyance of March 1, 1954, was given with the intent to hinder, delay and defraud the plaintiffs in the collection of their debts.

### Plea of the Four-Year Statute of Limitation

We shall next dispose of the defendants' contention that the plaintiffs' cause of action was barred by the four-year statute of limitations. It is the defendants' position that the *only* remedy available to the plaintiffs was an equitable action to set aside the conveyances as fraudulent, and that such an action was barred by Article 5529, supra. The defendants contend that since the plaintiffs obtained their judgment in Ft. Davis *after* the fraudulent conveyances were made, the plaintiffs are not entitled to relate the judgment back so as to establish a lien on the property at the time of conveyance when legal title to the property stood in the name of the defendant. Thus, the defendants conclude that the plaintiffs had no judgment lien which they could establish and foreclose unless they *first* maintained an equitable action to set aside the fraudulent conveyance.

On the other hand, the plaintiffs argue that since they were judgment creditors of the defendants, they had alternative remedies available. First, the plaintiffs argue that they could maintain an equitable suit to set aside the fraudulent conveyances as an obstruction to the collection of their debt. Alternatively, the plaintiffs insist they could establish and foreclose their judgment lien on the land fraudulently conveyed. The plaintiffs argue that this alternative remedy was available to them *without first* maintaining an equitable action to set aside the conveyances. We sustain the plaintiffs' position.

In Eckert v. Wendel, 120 Tex. 618, 40 S.W.2d 796, 76 A.L.R. 855 (1931), the defendant, who was a debtor of the plaintiff, fraudulently conveyed certain land in 1921. Not until 1927 did the plaintiff-creditor institute proceedings whereby he obtained a judgment against the defendant for the debt. Thereafter, in 1928, the plaintiff brought suit to cancel the 1921 conveyance as fraudulent, and to establish and foreclose his judgment lien. In answer to the defendant's argument that the suit was barred by the four-year statute of limitations (Article 5529, supra), this court first set out the general rule that until a creditor fixes a lien his only remedy as against the grantee in a conveyance of real estate in fraud of his rights " * * * is an action for a decree annulling the conveyance as an obstruction to the collection of his debt. Such an action is not one for the recovery of land, nor is it one to enforce a lien on land, but it is simply an action to cancel a conveyance of land because of fraud, and, no other period of limitation being prescribed for such an action, it comes within the four-year statute."

However, the Court further held that since the plaintiff had obtained a judgment against the defendant, Article 5529, supra, did not bar his right to foreclose this judgment since:

" * * * a suit to enforce a subsisting judgment lien on land against a grantee in a conveyance void under our statutes as to the judgment creditor is not barred until the fraudulent grantee or his assigns acquires 'full title' to the land, 'precluding all claims,' under some statute of limitations which would bar an action for the recovery of real estate."

There is no merit to the defendants' position that the Eckert decision conflicts with cases by this court which hold that a judgment lien does not attach to land until an abstract of judgment has been properly recorded and indexed. The Eckert case does not hold that a judgment creditor may relate his judgment *back* so as to establish a lien on land which is fraudulently conveyed prior to the creditor obtaining a judgment. No holding in the Eckert decision was based on the "relation-back" doctrine.

The theory of the Eckert case is simply that a conveyance which is found to be fraudulent as to creditors is wholly null and void as to such creditors under the provisions of Articles 3996 [3] and 3997,[4] Vernon's Annotated Civil Statutes. It necessarily follows that the legal as well as the equitable title remains in the debtor for the purpose of satisfying debts. Thus, when the creditor obtains a judgment against the debtor, and properly records and indexes an abstract of such judgment, the creditor acquires a lien upon the land just as though no transfer had been made.

3. "Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, every suit commenced, or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser, for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

4. "Every gift, conveyance, assignment, transfer or charge made by a debtor, which is not upon consideration deemed valuable in law, shall be void as to prior creditors, unless it appears that such debtor was then possessed of property within this State subject to execution sufficient to pay his existing debts; but such gift, conveyance, assignment, transfer or charge shall not on that account merely be void as to subsequent creditors, and though it be decreed to be void as to a prior creditor, because voluntary, it shall not for that cause be void as to subsequent creditors or purchasers."

In the Eckert case, decided in 1931, this court held that the legal remedy of establishing and foreclosing his judgment lien is available to a judgment creditor without first maintaining an equitable action to set aside the fraudulent conveyance. Furthermore, this remedy of foreclosure may be pursued by the creditor even when his equitable action to set aside a conveyance has been barred by Article 5529, supra. We can see no sound basis, at this late date, for overruling the Eckert decision and now holding that a debtor, by fraudulently conveying his land prior to the entry of judgment, may force a judgment creditor to pursue only an equitable remedy, and deprive the judgment creditor of his legal right to foreclose his judgment lien. Under the Eckert case, this "direct attack" based on his judgment is available to the creditor until the fraudulent grantee or his assigns acquire "full title" to the land, "precluding all claims," under some statute of limitations which would bar an action for the recovery of real estate.

### Adverse Possession Under the Three-Year Statute of Limitations

The defendants next argue that the plaintiffs were barred from foreclosing their judgment lien because they (the defendants) had acquired "full title" to the land in question, thereby "precluding all claims," under Article 5507, supra.

The jury found that the defendant Texas Sand Company, together with its successors in title, had not held peaceable and adverse possession of the 2,031 acres in question for three years prior to the institution of this suit. The burden was upon the defendants to establish the affirmative of this issue. The evidence fails to show as a matter of law that the defendants discharged their burden of proving that they had established title under the three-year statute of limitations. The defendants argue that they proved peaceable and adverse possession by the Texas Sand Company and Flora Shield for a period of three years under "title" or "color of title," as provided for in Article 5507, supra. We do not agree.

The last transfer of record involving the land in question was the deed dated March 17, 1954, from the defendants Richard Shield and wife to the Texas Sand Company. This company was incorporated by the Shield family on February 2, 1954. Its right to do business in this state was forfeited on July 5, 1955, for failure to pay franchise taxes. On September 1, 1956, the Attorney General forfeited the company's charter for the same reason.

The defendants recognize that the claimed possession exercised by the Texas Sand Company did not fulfill the requirements of the three-year statute. In fact, the person who claimed possession of the land at the time of trial was not the Texas Sand Company, but was the defendant Flora Shield.

In regard to Flora Shield's claim of title by adverse possession, the uncontradicted evidence shows that the chain of transfers of the land in question does not extend to her. Any interest she had in this land passed under the conveyance of March 1, 1954. This is so because a conveyance, though fraudulent, is valid as between the parties to the conveyance. See Eckert v. Wendel, supra; Douglas v. First National Bank, 120 Tex. 631, 40 S.W.2d 801 (1931); Rutherford v. Carr, 99 Tex. 101, 87 S.W. 815 (1905). After the last transfer of record involving this 2,031 acres was made to the Texas Sand Company on March 17, 1954, no further deeds were executed.

The defendants argue that it is immaterial whether or not there was a written deed from the company to Flora Shield. It is their position that she was the owner of the company, and that when its charter was forfeited, the alleged "title" or "color of title" of the company automatically transferred to Flora Shield, thereby extending the possession for the full three years. The

defendants further argue that upon the dissolution of the company, the corporate assets became the property of its stockholders, in proportion to their respective shares. The defendants then conclude that since Flora Shield was the sole stockholder in Texas Sand Company, the sole question is whether the title acquired by her to the property of the company upon its dissolution constitutes "title" or "color of title" within the meaning of Article 5507, supra.

The difficulty with the defendants' position, even assuming that it correctly states the law, is that the jury could reasonably believe from the evidence that Flora Shield was not the owner and sole stockholder of Texas Sand Company. In this regard, Flora Shield testified that no stock certificates were ever issued by the company; that no stock was paid for in cash; and that she did not have any evidence in writing to show her to be the owner of such stock. Elgean Shield also testified that he did not know of any stock being issued to show who owned the company and, although he stated he was the last president of the company, he did not know who owned it.

The record in this case does not show, as a matter of law, that the Texas Sand Company, or its successors in title, held adverse possession of the land in question in compliance with the requirements of Article 5507.

*Validity of the Judgment Lien*

The defendants next argue that at the time of the March 1, 1954, conveyance, the land in question was the separate property of Flora Shield. According to the defendants, if the record title appeared in Elgean Shield prior to March 1, 1954, "the undisputed evidence is that he held as trustee for his wife, Flora Shield." Thus, the defendants conclude that the plaintiffs have no valid judgment lien to foreclose because the judgment which they acquired in Ft. Davis against Elgean Shield could not be said to attach as a lien to the separate property of Flora Shield.

The jury found that at the time of the March 1, 1954, conveyance, the record title in the name of Elgean Shield to the 2,031-acre tract was not held for the use and benefit of his wife, Flora Shield. The defendants contend that there is no evidence to support this finding. We do not agree.

In 1937 the status of the 2,031 acres was that, by inheritance, Elgean Shield owned a %25ths interest, I. O. Shield owned a %25ths interest, Camille Wallace owned a %25ths interest, Leon Shield owned a %25ths interest and Shield Brown owned a ½5th interest. All of these parties had joined in a mortgage and deed of trust to P. O. Ketchum, which lien and note were later transferred to Kansas City Life Company. The interest of Leon Shield was mortgaged under a deed of trust, which was a second lien, to the First Coleman National Bank, and both notes were in default in 1937. Mrs. Flora Shield knew of these mortgages and knew that the notes were delinquent. At that time, in 1937, I. O. Shield, by two separate deeds, conveyed his interest in the land to Mrs. Flora Shield (and in addition 500 more acres, which were later conveyed by Elgean Shield to Camille Wallace in the partition suit), and *Elgean Shield conveyed his interest in the land to Mrs. Flora Shield.* The deed to the 2,031 acres from I. O. Shield recited that it conveyed his %25ths interest, and the deed to the 500 acres recited that it conveyed "all my right, title and interest as it appears" in the said lands. *The deed of Elgean Shield to Flora Shield also conveyed "all of my interest as it appears"* in the said lands.

The First Coleman National Bank then acquired the lien of Kansas City Life Company and foreclosed against the land, and a trustee's deed was executed to the First Coleman National Bank in early 1938. A ratification deed was then executed to the First Coleman National Bank by all of the parties including Mrs. Flora Shield, and this ratification contained a warranty of title.

In 1938 the land was conveyed by the First Coleman National Bank to Elgean

Shield, and he conveyed an undivided interest therein to Camille Wallace. This undivided interest was later the subject of a partition suit in 1950, and deeds were exchanged, Camille Wallace conveying to Elgean Shield all of her interest in the 2,031 acres and Elgean Shield conveying to Camille Wallace all of his interest in the 500 acres.

In 1947 Elgean and Flora Shield executed a deed of trust on their interests in the 2,031-acre ranch to the Ortin Associates securing the payments of certain notes, and in 1949 this deed of trust was foreclosed and the property was conveyed by trustee's deed to Shield Oil and Gas Company. In 1950 Shield Oil and Gas Company conveyed the said 2,031 acres to Elgean Shield, such deed reciting "unto the said Elgean Shield out of his sole and separate estate."

The defendants contend that the deed from Elgean Shield to Flora Shield in 1937 was a warranty deed. Thus, the defendants contend that the deed from The First Coleman National Bank to Elgean Shield in 1938 was an "after-acquired" title. We do not agree, As stated by the Court of Civil Appeals:

"* * * the conveyances to Flora Shield in 1937 conveyed the 'right, title and interest as it appears' in the property and the evidence shows that the right, title and interest of each of the grantors was subject to mortgages and deeds of trust, the existence of which was well known by Mrs. Shield. These mortgages were foreclosed and thereby Mrs. Shield's separate interest in the land was also foreclosed and lost."

Furthermore, Flora Shield joined in the deed of trust with her husband in 1947 to Ortin Associates, and on foreclosure of this deed of trust a trustee's deed was given to Shield Oil and Gas Company. Then Shield Oil and Gas Company conveyed the subject property to Elgean Shield, reciting that the consideration was paid *out of his sole and separate estate* and the deed was made to him *as his sole and separate property.* The

record does not show, as a matter of law, that at the time of the March 1, 1954, deed, the land in question was the separate property of Flora Shield.

### Jury Argument

In addition to the questions heretofore considered, the defendants urge that a certain argument made to the jury by plaintiffs' counsel was so inflammatory and prejudicial as to constitute reversible error.

The particular argument which defendants contend requires a reversal of the judgments of the trial court and the Court of Civil Appeals was made by one of the plaintiffs' attorneys in the closing argument to the jury. The attorney stated:

"Now, let's see what right we have to expect from some of the other parties in the case. First, we can expect this: We can expect the testimony of the defendants to come from professional litigants. *Mr. Cofer says that you can look through all these and you don't see Elgean and Flora Shield bringing suits. Mr. Cofer, I say to you that today I don't see your client Billie Sol Estes bringing a suit against anybody either.*"

Counsel for the defendants immediately objected to this argument and moved for a mistrial. The trial court sustained the objection and instructed the jury to disregard the statement, but overruled the defendants' motion for a mistrial. The plaintiffs insist, and the Court of Civil Appeals has held, that the reference to Billie Sol Estes was not improper because the argument was invited by counsel for the defendants. However, we find it unnecessary to decide whether it was invited since we have concluded that, in any event, the argument, although entirely out of the record, was not such as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Clearly, the argument complained of was improper. A litigant is entitled to have his counsel argue the facts of the cause

to the jury. Counsel may properly discuss the reasonableness or unreasonableness of the evidence and its probative effect or lack of probative effect; but such latitude extends only to the facts and issues raised by the evidence admitted under the ruling of the Court. See Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054 (1940).

Although the statement that the defendants' counsel also represented Mr. Estes had no legitimate bearing on any issue to be decided by the jury; and, although we accept the statement of defendants' counsel that "[a]t the time this remark concerning Billie Sol Estes was made to the jury * * *, Mr. Estes enjoyed a notoriety and infamy seldom before known in this country," it remains that before reversing a judgment because of the argument, it must appear not only that the argument was improper, but that it was such as to satisfy an appellate court after a review of all of the evidence that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rules 434 and 503, Texas Rules of Civil Procedure; Aultman v. Dallas Railway & Terminal Company, 152 Tex. 509, 260 S.W.2d 596 (1953). Unless the argument of plaintiffs' counsel was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case, this court will not disturb the judgments of the courts below even though the argument complained of was improper and uninvited. The question of whether the argument was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, is to be determined as a matter of our judgment in the light of the record as a whole. See Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115 (1951); Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191 (1949).

Regrettably, on several occasions this court has been called on to decide whether an argument by counsel necessi-

tated a reversal of a cause. In some of the cases, such as Southwestern Greyhound Lines v. Dickson, supra, it has been held that argument otherwise excessive or improper is justified by "invitation" emanating from the opposite side. In other cases, such as Blum v. Simpson, 66 Tex. 84, 17 S.W. 402 (1886), the rule as announced in Southwestern Greyhound does not authorize the use of language, the purpose of which is only to influence or prejudice the jury. Other cases deal with the question of whether certain types of arguments are "curable" or "incurable." See Wade v. Texas Employers' Ins. Ass'n., 150 Tex. 557, 244 S.W.2d 197 (1951); Houseman v. De Cuir, 155 Tex. 127, 283 S.W.2d 732 (1955). However, regardless of the type or category in which an argument might fall, the true test is as laid down in Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954), the test that has been consistently followed by this court since the adoption of Rules 434 and 503, supra. In the Haywood case, we said:

"The true test is the degree of prejudice flowing from the argument— whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict."

In spite of the admonitions contained in the Haywood and other cases, it seems that some lawyers continue to disregard the fact that they are officers of the court, and, as such officers, have taken an oath which calls for the highest type of ethical conduct in the performance of their duty in the trial of cases.

Each departure from this degree of ethical conduct, when properly objected to and preserved for review, requires this court, under the rules and the authorities, to examine the entire record to determine whether an argument was reasonably cal-

culated to cause, and probably did cause, the rendition of an improper judgment. It seems that lawyers, as officers of the court, would refrain from injecting into a case matters that are entirely foreign to the issues involved and which could easily, under some situations, bring about a reversal.

We have been compelled to examine the entire record, and in the light of the whole record, it seems more than likely that the jury's finding that the deed involved was executed with the intent to hinder, delay and defraud the creditor-plaintiffs, was based on the evidence rather than upon the statement of plaintiffs' counsel in which he referred to Billie Sol Estes. We can reach no other conclusion but that the argument, although improper, was not such as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

This disposes of all questions necessary to a decision in this case. The judgments of the trial court and the Court of Civil Appeals are affirmed.