Opinion issued
January 27, 2011



In The

Court of Appeals

For The

First District of Texas

————————————

NO.
01-10-00185-CV

———————————

MICHAEL CONTI and RAINBOW CONTI, Appellants

V.

TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee



 



 

On Appeal from the 306th
Judicial District Court

Galveston County, Texas



Trial Court Case No. 08-CP-0097

 



 

 

MEMORANDUM OPINION

The trial court rendered judgment terminating the
parental rights of appellants, Rainbow and Michael Conti, who are the
biological parents of E.C.[1]  In four issues the Contis assert that the evidence is legally
and factually insufficient to support termination of their parental rights, that
the trial court abused its discretion when it denied their motion for a continuance,
and that the trial court allowed improper closing arguments that implied
Michael was convicted of sexually abusing a child.  We conclude that the Contis failed to
challenge all grounds alleged for termination of their parental rights, that
the evidence is legally and factually sufficient to support a finding that
termination is in the best interest of E.C., and that the trial court did not
abuse its discretion by denying their motion for continuance.  We also conclude that the Contis failed to
preserve portions of their challenge to the closing arguments and that
regarding those that were preserved, the trial court did not abuse its
discretion in overruling this objection.  We affirm.

Background

          After living together for a number of years, Michael and
Rainbow were married in the summer of 2008. 
They had one child together, E.C., who was born in September 2000.  Rainbow had two children from previous
relationships, M.S. and D.C.  Michael
also had two children from a previous relationship, but they lived with him only
during the summer and around Christmas.

          According to M.S., when she was about seven years of age,
Michael began treating her in a sexually inappropriate way.  M.S. told Rainbow, who spoke to Michael.  For a period of time, the activity stopped.  M.S. also testified that after Rainbow and
Michael’s wedding, Michael told M.S. that he had sexual feelings for her.  M.S. said that Michael touched her buttocks,
breasts, and female sexual organ. 
Michael also made her watch him give himself an orgasm on various
occasions.  M.S. began trying to avoid being
alone with Michael.  M.S. also stated
that Michael would become angry if she refused sexual acts and that he would
make her perform chores.  Michael also
told M.S. that if she did not do the things he wanted, he would move away from
her family, leaving Rainbow unable to support M.S. and her siblings.

          M.S. told Rainbow about the continuing abuse.  Rainbow responded by initiating family conferences
to discuss the situation, but Rainbow did not believe M.S. and did not report
the conduct to police or to other proper authorities.  Rainbow allowed Michael continued access to
the children despite M.S.’s report of sexual abuse.  At some point, Michael and Rainbow offered to
let M.S. watch them have sex.

M.S.
told a friend about the abuse, and the friend told a school counselor.  The counselor then told another counselor,
Natalie Uranga, who spoke with M.S.  When
Uranga spoke with her, M.S. was very closed off and denied the allegations of
abuse.  Uranga filed a report with the
Texas Department of Family and Protective Services (“DFPS”).

Hector
Garcia, special investigator for DFPS, worked with Jasmine Paddio on the case.  Garcia and Paddio interviewed M.S. at her
high school, where she confirmed the allegations against Michael.  After interviewing M.S., Garcia and Paddio met
with Rainbow at her work to discuss the allegations.  Rainbow told the investigators that she knew
about the abuse but that they did not need any help.  After speaking with Rainbow, Michael joined
the interview.  He told the investigators
that the allegations were true, that he was sorry for what he had done, and
that he was willing to “get help” in order to keep his family together.  In the interviews, M.S., Rainbow, and Michael
each separately told the DFPS interviewers that they were “going to work it out
as a family.”  

Garcia
testified that Michael telephoned him a few days after the interview.  Sounding upset, Michael told Garcia that he
wanted to kill himself.  Michael said that
he wanted to tell M.S. that he was sorry. 
When Garcia informed him that anything he said could be used against him
in court, Michael responded that Garcia was acting too much like a police
officer, and Michael hung up. 

Michael
took M.S. with him to speak with Matthew Parker, a youth pastor at their
church.  In the conversation, Michael told
Parker that he and Rainbow were having marital problems.  Michael mentioned that he discussed his
problems, including sexual ones, with M.S. 
After Michael left to go to a DFPS interview, M.S. remained with Parker,
who brought a female counselor into the room. 
M.S. told them about the abuse.  At
trial, Parker testified he had seen some improvement in M.S. since she moved out
of the Contis’ house.

          After learning of the abuse allegations, DFPS required the
children to be placed elsewhere.  The
Contis chose to place their children with Lori and Bradley Warren, who have
three children.  The Contis and the
Warrens were friends primarily because their sons were friends.  Over the years, Rainbow and Lori had grown closer.

          At trial, Lori testified that Michael frequently called
M.S. when M.S. was on church trips.  She
also testified that Michael frequently inquired about M.S.’s menstrual
cycle.  Lori expressed the desire to keep
the children in her home permanently, including adopting E.C.  Lori testified that they could provide a
stable home and financially provide for the children.  She explained that she worked part time at a
number of jobs, they earned money from a rental property, and Bradley received
unemployment compensation.

          The trial court ordered the Contis to take certain actions
to obtain the return of E.C.  One such action
was to provide a safe and stable home for E.C. 
Rainbow admitted on cross-examination that if Michael had abused M.S.,
she would not have provided a safe and stable home for her children.

          There was also testimony that E.C. should not remain with
the Contis.  A DFPS worker assigned to
the case testified that because Rainbow did not believe M.S.’s statements of
abuse by Michael, Rainbow would not be able to protect E.C.  Parker, the youth pastor, stated that he was
concerned for E.C.’s safety and welfare because of what had happened to
M.S.  Lori expressed similar concerns.

The
Contis’ trial attorney presented a number of witnesses, including family
members and people who had worked alongside Michael in his home office.  Those witnesses testified that they had not
noticed unusual behavior between Michael and M.S. and that they felt comfortable
with E.C. returning to live with the Contis.

          During trial, Michael admitted that in 1990, he had been
placed on deferred adjudication for indecency with a child.  He testified that M.S. made up the
allegations of sexual abuse because she was mad that he would not let her spend
the night at a friend’s house.  Michael explained
that he did not allow the sleepover because the friend was bisexual, an
allegation M.S. denied.  Additionally,
Michael testified that M.S. downloaded sexual additions to her “Sims” computer
game.  However, M.S. claimed that Michael
downloaded the additions.  Michael denied
that he said he was sexually attracted to M.S., claiming that after she went
through a break up, he tried to cheer her up by telling her that if he were a
young person, he would find her attractive.

Sufficiency of the Evidence

          In
their third issue, the Contis challenge the legal and factual sufficiency of
the evidence to support two of the three grounds found by the trial court under
section 161.001(1) and that termination of their parental rights was in the
best interest of E.C.  See Tex.
Fam. Code Ann. § 161.001(1) (West Supp. 2009).

          A.      Law
Concerning Termination of Parental Rights

A parent’s rights to the
“companionship, care, custody, and management” of his or her child are
constitutional interests “far more precious than any property right.”  Santosky
v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); see In re M.S., 115 S.W.3d 534, 547
(Tex. 2003).  A termination decree is
complete, final, and irrevocable, and it divests for all time that natural
right as well as all legal rights, privileges, duties, and powers with respect
to each other except for the child’s right to inherit.  Holick
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 
Termination proceedings should be strictly scrutinized, and the
involuntary termination statutes should be strictly construed in favor of the
parent.  Id.  However, “the rights of
natural parents are not absolute,” and “[t]he rights of parenthood are accorded
only to those fit to accept the accompanying responsibilities.”  In re
A.V., 113 S.W.3d 355, 361 (Tex. 2003). 
Recognizing that a parent may forfeit parental rights by acts or
omissions, the primary focus of a termination suit is the protection of the
best interests of the child.  Id. 


Proceedings to terminate
parental rights under the Texas Family Code require proof by clear and
convincing evidence.  Tex. Fam. Code Ann. § 161.001; In re J.O.A., 283 S.W.3d 336, 344 (Tex.
2009).  Clear and convincing evidence is
“proof that will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established.”  J.O.A.,
283 S.W.3d at 344.  When the legal
sufficiency of the evidence is challenged, a court should look at all the
evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that the
finding was true.  Id. (citing In re J.F.C.,
96 S.W.3d 256, 266 (Tex. 2002)).  To give
appropriate deference to the factfinder’s conclusions, looking at the evidence
in the light most favorable to the judgment means that a reviewing court must
assume that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so.  Id. 
A corollary to this requirement is that a court should disregard all
evidence that a reasonable factfinder could have disbelieved or found to have
been incredible.  Id.  This does not mean that
a court must disregard all evidence that does not support the finding.  Id.  Disregarding undisputed facts that do not
support the finding could skew the analysis of whether there is clear and
convincing evidence.  Id. 
If, after conducting its legal sufficiency review of the record
evidence, a court determines that no reasonable factfinder could form a firm
belief or conviction that the matter that must be proven is true, then that
court must conclude that the evidence is legally insufficient.  Id.
at 344–45.

When the factual sufficiency
of the evidence is challenged, only then is disputed or conflicting evidence
under review.  Id. at 345.  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction, then the evidence is factually
insufficient.  Id. (citing J.F.C., 96
S.W.3d at 267).  

The Contis challenge the
trial court’s finding that termination of their parental rights is in the best
interest of E.C.  Section 161.001 of the
Texas Family Code requires proof of two elements.  First, the party must prove that one or more
acts or omissions enumerated in one or more of the subsections of section
161.001(1) occurred.  See Tex.
Fam. Code Ann. § 161.001(1); In re
J.L., 163 S.W.3d 79, 84 (Tex. 2005); Liu
v. Dep’t of Family &
Protective Servs., 273 S.W.3d 785, 790 (Tex. App.—Houston [1st. Dist.]
2008, no pet.).  Second, the party must
prove that termination of the parent-child relationship is in the best interest
of the child.  See Tex. Fam. Code Ann.
§161.001(2); J.L., 163 S.W.3d at 84; Liu, 273 S.W.3d at 790.  Termination may not be based solely on the
best interest of the child.  Tex. Dep’t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987); Liu, 273
S.W.3d at 790.  

          B.      Section 161.001(1)

 

Under section 161.001(1), the
trial court found three grounds for terminating parental rights to E.C.  The trial court ordered termination of the
Contis’ parent-child relationship based on the jury’s finding by clear and
convincing evidence that the Contis (1) under section 161.001(1)(D), knowingly
placed or knowingly allowed E.C. to remain in conditions or surroundings that
endangered the physical or emotional well-being of E.C., (2) under section
161.001(E), engaged in conduct or knowingly placed E.C. with persons who
engaged in conduct that endangered the physical or emotional well-being of E.C.,
and (3) under section 161,001(1)(O), failed to comply with the provisions of a
court order that specifically established the actions necessary for them to
obtain the return of E.C., who had been in the permanent or temporary managing
conservatorship of DFPS Services for not less than nine months as a result of
E.C.’s removal from the Contis under Chapter 262 for the abuse or neglect of
E.C.  Tex.
Fam. Code Ann. § 161.001(1)(D), (E), (O).

Here, the Contis have not
challenged the sufficiency of the evidence to support termination under
subsection (O).  Because the judgment
could be upheld on this unchallenged ground, we must uphold the judgment
concerning the statutory grounds for termination, and we do not address the
Contis’ challenges to the sufficiency of the evidence under subsections (D) and
(E).  See
Fletcher v. Dep’t of Family &Protective Servs., 277 S.W.3d 58, 64 (Tex. App.—Houston [1st Dist.]
2009, no pet.) (citing Walling v.
Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993); Perez v. Tex. Dep’t of Protective & Regulatory Servs., 148 S.W.3d 427, 433–34
(Tex. App.—El Paso 2004, no pet.)).

C.      Best Interest
Finding

          1.       Applicable Law for Best Interest of the
Child

Prompt and permanent placement of the child in a safe environment is
presumed to be in the child’s best interest. 
See In re M.C.T., 250 S.W.3d
161, 170 (Tex. App.—Fort Worth 2008, no pet.) (citing Tex. Fam. Code Ann. § 263.307(a) (West 2008)).  There is also a strong presumption that a child’s best interests are served by
maintaining the parent-child relationship. In re L.M., 104 S.W.3d 642,
647 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  Nevertheless, while parental rights are of
constitutional magnitude, they are not absolute.  See In re C.H., 89 S.W.3d 17, 26 (Tex.
2002).  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent-child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.  Id. 


In Holley v. Adams,
the Texas Supreme Court provided a nonexclusive list of factors that the trier
of fact may use in a termination case to determine the best interest of the
child.  544 S.W.2d 367, 371–72 (Tex.
1976).  These factors include (a) the
desires of the child, (b) the emotional and physical needs of the child now and
in the future, (c) the emotional and physical danger to the child now and in
the future, (d) the parental abilities of the individuals seeking custody, (e)
the programs available to assist these individuals to promote the best interest
of the child, (f) the plans for the child by these individuals or by the agency
seeking custody, (g) the stability of the home or proposed placement, (h) the
acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one, and (i) any excuse for the acts
or omissions of the parent.  Id.  These factors are not exhaustive, and there is
no requirement that the petitioner prove all factors as a condition precedent
to parental termination.  See C.H.,
89 S.W.3d at 27; Adams v. Tex. Dep’t of Family & Protective Servs.,
236 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  

The same evidence of acts or
omissions used to establish grounds for termination under section 161.001(1)
may be probative in determining the best interests of the child.  C.H., 89 S.W.3d at 28; L.M.,
104 S.W.3d at 647.  Evidence of just one
factor may suffice to support a finding that termination is in the best
interest of the child.  See C.H.,
89 S.W.3d at 27.  However, termination of
the parent-child relationship is not justified when the evidence merely shows
that a parent’s failure to provide a more desirable degree of care and support
of the child is due solely to misfortune or lack of intelligence or training
and not to indifference or malice.  Clark
v. Dearen, 715 S.W.2d 364, 367 (Tex. App.—Houston [1st Dist.] 1986, no
writ).  

 

 

          2.       Analysis

We address the nine factors provided
in Holley to determine whether the
evidence is legally and factually sufficient to support the finding that
termination of Rainbow and Michael’s parental rights is in the best interest of
E.C.  Holley,
544 S.W.2d at
371–72.

                   a.       Desires
of Child

E.C., who was nine years of
age at the time of trial, did not testify at trial.  However, there is evidence demonstrating her
desire to live with the Contis.  In DFPS’s
exhibits 1, 4, 5, 6, and 7, E.C. made illustrations and wrote about how she
loved her parents and wanted to come home. 
Additionally, during Rainbow’s weekly visits with the children, Lori
testified that E.C. always wanted to be on Rainbow’s lap.  Lori also testified that E.C. missed her
parents and cried a lot when she first came to live with her.  This factor weighs against termination of the
Contis’ parental rights.

                   b.      Emotional and Physical Needs Now and in the
Future

The Contis have provided for
the physical needs of E.C. by providing food and shelter.  They have also emotionally bonded with
E.C.  There is evidence that E.C. is
having emotional difficulty because of her separation from her parents.  As discussed above, she has communicated that
she misses her parents and wants to return home.  

Michael has a prior deferred
adjudication for indecency with a child, and he sexually abused M.S., beginning
when she was seven years of age.  Rainbow
disbelieved M.S., refusing to remove her from the abuse.  The home environment provided by the Contis
was sexually inappropriate toward M.S., which would suggest that E.C.’s emotional
and physical needs may be endangered in the future by exposure to similar
conduct.

Lori testified that she provides
shelter, food, and emotional support to E.C. 
Lori testified that all six of the children treat each other like
siblings.  By remaining with the Warrens,
E.C. has the opportunity to continue living with her siblings and avoid potential
abuse from Michael.  The second factor
weighs in favor of termination of parental rights.

c.       Emotional
and Physical Danger Now and in the Future

 

Although the record does not
show any evidence of physical or emotional abuse toward E.C., there is evidence
that Michael physically and emotionally abused E.C.’s sibling, M.S.  When asked if she would be concerned for
E.C.’s safety if returned to the Contis, Lori answered “Yes.  [E.C.] is going to grow up . . . .  What’s going to not stop this from happening
again[?]”

The Contis presented
testimony from Peter Gorman, William Hobson, and Sandy Griffin that they
believed E.C. would be safe if she returned to the Contis.  All three witnesses spent time around the
Contis because they worked out of a part of the Contis’ house.  From 2004 to 2008, Gorman worked out of the Contis’
house.  From early 2004 to 2006, Griffin
worked out of the Contis’ house; however, she testified that she had no
personal knowledge whatsoever about what was going on in the Contis’ home from
2008 to 2010.  Hobson also worked out of
part of the Contis’ house from 2004 until the time of trial because he worked
for Gorman.  Hobson testified that he did
not know a whole lot about the Contis’ personal life.  The offices in which Gorman and Griffin worked,
which Gorman made by converting an old breezeway and game room, were located on
one end of the Contis’ 6,500 square foot house, and the Contis lived in the
other end.  Although these witnesses did
not see any abuse, their distance from the family makes their testimony
inconclusive.

The
evidence concerning Michael’s abuse of M.S. suggests he also poses a danger to
E.C.  See
C.H., 89 S.W.3d at 28.  Evidence that a person has engaged in abusive conduct in the
past permits an inference that the person will continue that behavior in the
future.  Schaban-Maurer v. Maurer-Schaban, 238 S.W.3d 815, 824 (Tex.
App.—Fort Worth 2007, no pet.); see also In
re M.G.M., 163 S.W.3d 191, 202 (Tex. App.—Beaumont 2005, no pet.).  By
living with the Warrens, E.C. will not be exposed to emotional and physical
danger from Michael now and in the future. 
The third factor weighs in favor of termination of the Contis’ parental
rights.

d.      Parenting Abilities

Although her work as a childcare
worker for fifteen years shows that she has the capacity to parent E.C.,
Rainbow’s conduct in knowingly permitting the sexually inappropriate
circumstances shows her parenting abilities are inadequate.  Rainbow testified that she never asked
Michael to leave their home during DFPS’s investigation so that she could
continue living with her children. 
Despite Michael’s offer to leave the house so that she could remain with
her children, Rainbow chose to remain with Michael instead of her children.  Rainbow stated that she did not believe M.S.’s
statements about the abuse and that she blamed M.S. for what happened to her
family.  This choice to remain with
Michael caused the children to be removed from the home and placed with the
Warrens.

Additionally, Michael had a deferred
adjudication for indecency with a child. 
That, in combination with M.S.’s testimony describing his abuse of her,
demonstrates his lack of parenting abilities for E.C.  This factor weighs heavily in favor of
termination of the Contis’ parental rights.

e.       Programs
Available to Assist in Care of E.C.

The Contis contend the Warrens
do not have the financial resources to care for the children.  Lori, however, testified that the State
assists in paying for E.C.’s daycare. 
Additionally, Lori stated that if she adopts E.C., there would be money
to provide for her daycare and her continued therapy until she turned 18.  The State would also pay to financially
assist Lori for child-related expenses and for E.C.’s college education.  The State’s financial assistance will help
the Warrens care for E.C. 

In contrast, there is very
little evidence about the Contis’ finances. 
Michael appears to have a stable job, based on the testimony of
individuals who said they worked at Michael’s home office.  Rainbow was recently laid off from her
job.  The Contis claimed their resources
were inadequate to hire a lawyer. 
Nothing in the record suggests there would be any program to care for
E.C. if she remained with the Contis.  The
fifth factor weighs neither in favor of nor against termination of the Contis’
parental rights.

f.       Plans
for the Child

Lori testified that she would
like to adopt E.C. and provide her with a stable home with E.C.’s siblings.  Therefore, the record shows that the Warrens
have a plan for E.C. if the parental rights of the Contis are terminated.

If the parental rights of
the Contis were not terminated, Rainbow planned to bring E.C. back to the home
with Michael, despite the allegations about Michael made by her other daughter,
M.S.  Therefore, the sixth factor weighs
in favor of termination of the Contis’ parental rights.

 

 

       g.       Stability of Home

The goal of establishing a
stable, permanent home for a child is a compelling state interest.  In re
C.E.K., 214 S.W.3d 492, 498 (Tex. App.—Dallas 2006, no pet.).  The record shows the Contis did not provide a
stable home for M.S. because M.S. was sexually abused by Michael and the Contis
asked M.S. to watch them engage in sexual acts. 
Rainbow did not report the abuse to the police, and she continued to
allow Michael access to the children despite M.S.’s report of abuse.  E.C. lived in the same house with them in
this unstable environment.

Although there is some
evidence of financial strain, the record shows that the Warrens have provided a
stable home for E.C., who will be able to stay with her siblings by living with
the Warrens.  The seventh factor weighs
in favor of termination of the Contis’ parental rights.

h.      Acts
or Omissions of Parent that May Indicate Existing Parent-Child Relationship is Not
a Proper One, and

i.        Any
Excuse for Acts or Omissions of Parent

 

Michael sexually abused
M.S., and Rainbow failed to adequately protect M.S. from the abuse.  Rather than remain with E.C., Rainbow chose
to live with Michael, which required E.C. to move in with the Warrens.  

The Contis contend that M.S.
apologized for making the allegations and stated that nothing happened.  However, M.S. denies that she withdrew her
claims of abuse.  The Contis also contend
that DFPS misconstrued statements made by Michael and used it against him.  Claiming he was attempting to console her
after a break up, Michael claims he told M.S. that he would find her attractive
if he were a young man.  However, a
number of other witnesses support the statement that Michael told M.S. he was
sexually attracted to her, and M.S. testified as to this meaning of the
statement.  

The eighth and ninth factors
weigh in favor of terminating the Contis’ parental rights.  See
Castorena
v. Tex. Dep’t of Family & Protective Servs., No. 03-02-00653-CV, 2004 WL 903906, at *9 (Tex. App.—Austin Apr. 29,
2004, no pet.) (mem. op.) (noting that in termination proceedings, “[a]lthough
evidence of past misconduct or neglect alone may not be sufficient to show
present unfitness, the factfinder may permissibly infer that an adult’s future
conduct may well be measured by recent deliberate past conduct as it relates to
the same or a similar situation”).

          3.       Conclusion of Analysis

In this case, one factor weighs against termination:  the desire of the child.  However, this alone is not enough to allow
E.C. to remain in the abusive environment. 
As the Texarkana court of appeals states:  

Although
a child’s love of his natural parents is a very important consideration in
determining the best interests of the child, it cannot override or outweigh the
overwhelming and undisputed evidence showing that the parents placed or allowed
the child to remain in conditions, and engaged in conduct or placed the child
with persons who engaged in conduct, which endangers the physical and emotional
well-being of the child.  The child’s
love of his parents cannot compensate for the lack of an opportunity to grow up
in a normal and safe way equipped to live a normal, productive, and satisfying
live. 

 

In
re W.S.M. 107 S.W.3d 772, 773 (Tex.
App.—Texarkana 2003, no pet.).  Conversely, just one
factor can suffice to warrant termination. 
See C.H., 89 S.W.3d at 27.  Here, seven of the factors weigh in favor of
concluding that termination of the Contis’ parental rights is in the best
interest of E.C.  

It is not in E.C.’s best
interest to place her in a sexually abusive environment.  E.C. is about the same age as M.S. was when
Michael began abusing M.S.  Despite M.S.
telling her about the abuse, Rainbow disbelieved M.S., failed to report it, failed
to protect E.C. by making Michael move out of the house, and chose to live with
Michael instead of M.S. and E.C. 
Michael’s deferred adjudication for indecency with a child and his
sexual abuse of M.S. show he is unfit to be a parent to E.C.  The Warrens have offered to adopt E.C. and let
her live in their home with her siblings. 
Although they have some financial strains, the Warrens would benefit
from resources provided by the State to help take care of E.C.

In light of all the
evidence, the jury court could have reasonably formed a firm belief or
conviction that termination of the Contis’ parental rights was in E.C.’s best
interest.  Accordingly, we hold the evidence
is both legally and factually sufficient to support the trial court’s finding
that termination of the Contis’ parental rights was in the best interest of
E.C.  See
In re L.C., 145 S.W.3d 790, 799–800 (Tex. App.—Texarkana 2004, no pet.)
(evidence legally and factually sufficient to support best interest finding for
termination of mother’s parental rights to five children where evidence included
that mother disbelieved one child’s report of sexual abuse by stepfather and
failed to provide emotional support for abused child); In re A.B., 125 S.W.3d 769, 777–78 (Tex. App.—Texarkana 2003, pet.
denied) (parent’s denial of sexual abuse and failure to provide emotional
support for abused child, such as participating in recommended counseling,
supported trial court’s finding that termination was in child’s best interest);
In re J.T., No. 13-08-00652-CV, 2009
WL 2077184, at *14 (Tex. App.—Corpus Christi July 16, 2009, no pet.) (mem. op.)
(holding that evidence was sufficient to support trial court’s best interest
finding where mother allowed child to be in contact with individual who had
physically abused her, mother was not capable of caring for child on her own,
mother admitted at trial she had not found stable employment, and child was
doing well in her current placement).

We overrule the Contis’
third issue.

Motion for Continuance

In their first two issues,
the Contis contend that the trial court abused its discretion when it denied their
motion for continuance.  The Contis
contend that this was error because their counsel should have been provided
with extra time to prepare since he was retained only three days prior to trial.  Additionally, they contend that they should
have been provided with a continuance until Michael’s criminal trial was
completed so that he did not have to decide between invoking his Fifth Amendment
right against self-incrimination and defending himself against the State’s
request to terminate his parental rights. 


A.  
     Applicable
Law

The decision to grant or
deny a motion for continuance is within the trial court’s sound
discretion.  See Tex. R. Civ. P.
251.  We will not disturb the trial
court’s denial of a motion for continuance except for a clear abuse of
discretion.  Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986); Verkin v. Southwest Ctr. One, Ltd., 784
S.W.2d 92, 94 (Tex. App.—Houston [1st Dist.] 1989, writ denied).  This court cannot substitute its judgment for
the trial court’s, but must only determine whether the trial court’s action was
so arbitrary as to exceed the bounds of reasonable discretion.  Philipp
Bros., Inc. v. Oil Country Specialists, Ltd., 709 S.W.2d 262, 265 (Tex.
App.—Houston [1 Dist.] 1986, writ dism’d). 
A trial court abuses its discretion if its decision is arbitrary,
unreasonable, and without reference to any guiding rules and principles.  Mercedes-Benz
Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996).  If some probative and substantive evidence
supports the order, there is no abuse of discretion.  Whitworth
v. Whitworth, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no
pet.).

A motion for a continuance
shall not be granted except for sufficient cause supported by an affidavit,
consent of the parties, or by operation of law. 
Tex. R. Civ. P. 251.  If a motion for continuance is not made in
writing and verified, it will be presumed that the trial court did not abuse
its discretion in denying the motion.  In re E.L.T. 93 S.W.3d 372, 375 (Tex.
App.—Houston [14th Dist.] 2002, no pet.). 
Additionally, absence of counsel, standing alone, is not good cause for
a continuance.  Tex. R. Civ. P. 253 (West 2004); O’Connor v. O’Connor, 245 S.W.3d 511, 516 (Tex. App.—Houston [1st
Dist.] 2007, no pet.).  When withdrawal
of counsel is the ground for continuance, the movant must show that failure to
be represented by counsel at trial was not due to his own fault or
negligence.  Villegas, 711 S.W.2d at 626.

B.  
     Analysis of Denial of Continuance to Prepare
for Trial

The Contis assert that the
trial court abused its discretion when it denied their motion for continuance,
which requested additional time for counsel to prepare for trial.  We address (1) the sequence of events, (2)
the Contis’ financial ability to hire an attorney, (3) their efforts to obtain
counsel, and (4) the effectiveness of the trial attorney.

          1.       Sequence
of Events 

In this case, the original
petition was filed on November 19, 2008, and the trial was originally set eleven
months later on October 19, 2009.  The
Contis hired Kira McKeown to represent them in the trial, but on February 24,
2009, she moved to withdraw as counsel. 
The motion to withdraw was granted on March 6, 2009.  On May 12, 2009, Rainbow hired Tom
Sanders.  Sanders filed a motion to withdraw
on August 26, 2009.  On September 23,
2009, Donna LeLeux, attorney for the children, filed a motion for continuance
so that she could attend a Continuing Legal Education seminar.  On October 6, 2009, the continuance was
granted, and the trial was reset for January 11, 2010.

On December 30, 2009, which
was 12 days before the January 11 trial setting, the Contis filed a written
motion for continuance so they could find an attorney to take their case.  They contended that they would be denied due
process of law and equal protection if they were forced to represent
themselves.  In that written motion for
continuance, the Contis did not mention the pending criminal trial against
Michael or their financial inability to obtain counsel.

On January 8, 2010, the
Friday before the Monday, January 11, trial setting, the Contis attended a
pretrial conference, representing themselves. 
The Contis asked for a continuance, and they verbally mentioned the
pending criminal trial as an additional reason for granting the
continuance.  Counsel for DFPS and
counsel for E.C. opposed the continuance.  The trial court denied the motion because it
did not appear that the criminal trial would occur when it was set.  Although Michael’s criminal trial was set for
January 11, 2010, it was fifteenth on the docket.

On January 11, 2010, the day
the trial was scheduled to begin, the Contis appeared with counsel, who they
hired in the afternoon after the January 8 pretrial conference.  When counsel was hired on January 8, ten
months had passed without Michael hiring an attorney to represent him, and four
months had passed without Rainbow hiring an attorney to represent her.  Contis’ counsel moved
for a continuance in writing and verbally. 
He listed the reasons for the continuance as the need for time to
prepare, since he was recently retained, and the pending criminal trial against
Michael.  He stated that at the pretrial
conference the Contis had not tendered a witness list or exhibit list because
they did not know that they had to do so. 
Although the trial court allowed the Contis to prepare and submit a
handwritten witness list at the pretrial conference, Contis’ counsel stated that they had left important witnesses
off the list.  The trial court denied the
motion for continuance but allowed the Contis’ counsel additional time to submit a witness list and
exhibit list.  The trial court also
allowed Contis’ counsel additional
time to review and object to DFPS’s exhibits 1 through 24, which were admitted
during the pretrial conference.  On
January 12, 2010, the court addressed the motion for continuance with all of
the attorneys.  Counsel for DFPS and
counsel for E.C. both objected to the continuance.  The trial court denied the motion for continuance.  The trial commenced on January 12, 2010,
which was one year and almost two months from the date on which the original
petition was filed.

          2.       Financial
Ability to Hire Attorney

The Contis suggest that
their failure to timely hire an attorney was not due to their own fault or
negligence but was rather due to their financial inability.  

The Contis did not raise
financial inability to hire an attorney in their written motions for
continuance filed on December 30, 2009, and January 11, 2010.  The Contis also do not make this argument in
their brief.[2]  Instead, they raised the issue of their
financial inability for the first time at oral argument.  We further note that the record contains no
direct evidence of the Contis’ financial ability.

          The record
does disclose that the Contis’ lived in an approximately 6,500 square foot
house, although about 1,000 square feet of a breezeway and gameroom had been
converted into an office.  Michael is a
computer “geek” and, after working for NASA for a number of years, began his
own business installing audio-video systems and home theaters and building
automation controls.  Michael testified
that he had a number of large clients. 
At one point, Michael’s business had eight employees.    

          Because there is no evidence in the
record to show that the Contis raised indigency as a ground for their
continuance or that they were financially unable to hire counsel, we conclude that
the Contis have failed to show that the trial court abused its discretion by
denying their motion for continuance due to financial inability. 

          3.       Efforts to Obtain Counsel

          In their verified motion for
continuance filed on December 30, 2009, the Contis asserted that they had
“diligently attempted to secure representation for this very important case,
and all efforts, until very recently, have failed.”  The Contis also stated that they discussed
their case with one attorney who would not take it because of the short amount
of time to prepare for trial.  Although Rainbow
had four months and Michael had ten months to obtain counsel, the record
reflects that they spoke to only one attorney before obtaining representation on
the day of the pretrial conference.  We
hold that the Contis did not meet their burden to show that their failure to be
represented by counsel was not due to their own fault or negligence, where the
only evidence in the record shows that they spoke to two attorneys shortly
before the trial setting despite Michael being without counsel for ten months
and Rainbow being without counsel for four months.  See Landers v. Adelson, 788 S.W.2d 940, 941–42 (Tex. App.—Fort
Worth 1990, no writ) (holding no abuse of discretion in denying continuance when client agreed to
withdrawal of counsel and had almost four months to retain new counsel).

                   4.       Effectiveness
of Trial Counsel

          The Contis also contend that the trial
court’s denial of the motion for continuance deprived them of their right to
effective assistance of counsel.

          The Texas Supreme Court has held that
the Texas Family Code’s provision for appointed counsel for indigent parents, see Tex.
Fam. Code Ann. § 107.013(a)(1) (West Supp. 2009), “embodies the
right to effective counsel.”  M.S., 115 S.W.3d at 544.  The Texas Supreme Court also determined that the
standard of review to apply in evaluating claims of ineffective assistance of
counsel in termination of parental rights cases is the same as that set forth
by the United States Supreme Court for criminal cases in Strickland v. Washington, 466 U.S. 668 (1984).  Id.  “Under the well-established Strickland test, proving ineffective
assistance of counsel requires a showing that (1) counsel made errors so
serious that counsel was not functioning as ‘counsel’ guaranteed by the Sixth
Amendment, and (2) the deficient performance prejudiced the defense, which
‘requires showing that counsel’s errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable.’”  In re
H.R.M., 209 S.W.3d 105, 111 (Tex. 2006) (quoting M.S., 115 S.W.3d at 545).  

          Here, the Contis generally assert that
the denial of the motion for continuance “denied counsel a realistic and
adequate time to prepare for trial, which resulted in a constructive denial of [the
Contis’] constitutional right to the effective assistance of counsel.”  Additionally, the Contis do not identify any
particular aspect of counsel’s performance that they contend was in error or
identify any particular harm from any purported error.  We note that the record shows that the
Contis’ counsel was active in presenting the Contis’ defense.  The trial court allowed each side one hour
for voir dire.  The Contis’ counsel
conducted voir dire and identified six prospective jurors to question further.  In individual questioning, Contis’ counsel
succeeded in having one of the six struck for cause and also successfully
opposed DFPS’s motion to strike a juror for cause.  During the course of the trial, he also
cross-examined DFPS’s witnesses and presented witnesses for the Contis.  He objected to evidence and testimony presented
by DFPS.  Nothing in the record shows
that the Contis were prevented from presenting witnesses or evidence during
trial due to the denial of their motion for continuance or that their defense
was harmed by lack of time to prepare for trial.   

          At the time of trial, the case had
been pending for over one year.  The case
was filed in November 2008, and the trial court had granted one continuance
from an October 2009 setting to January 11, 2010.  Although it denied the motion for
continuance, the trial court worked with Contis’ counsel to allow him time
during the trial to supplement the witness list and to examine exhibits.  The record demonstrates that Contis’ counsel presented
the Contis’ case, conducted voir dire, presented witnesses, cross-examined DFPS’s
witnesses, and objected to statements made by DFPS in closing argument.

          We conclude the Contis did not receive ineffective assistance of counsel
due to of the trial court’s denial of their motion for continuance.  See id.

We overrule the Contis’
first issue.

C.        Analysis of Denial of Continuance to
Allow Criminal Trial to     Proceed First

 

In their second issue, the
Contis contend the trial court abused its discretion in denying their motion
for continuance so that Michael’s criminal trial could be completed before the
termination trial.

This issue was not raised in
the first written motion for continuance that the Contis filed pro se on
December 30, 2009.  Michael did mention
it verbally at the pretrial conference on January 8, 2010, but it was not in
writing.  January 11, 2010, the first
scheduled day of the trial, was the first time Michael filed a motion asserting
that his criminal trial was a reason to continue this trial.

According to the Texas
Family Code section 161.2011(a):

A parent whose
rights are subject to termination in a suit affecting the parent-child
relationship and against whom criminal charges are filed that directly relate
to the grounds for which termination is sought may file a motion requesting a
continuance for the final trial in the suit until the criminal charges are
resolved.  The court may grant the motion
only if the court finds that a continuance is in the best interest of the
child.

 

Tex. Fam. Code Ann. §161.2011(a) (West Supp. 2009).  The statute requires that pending criminal
charges directly relate to the grounds for termination and that the continuance
would be in the best interest of the child. 
In their written version of the motion for continuance filed January 11,
2010, the Contis stated that the trial should be postponed because Michael had
a criminal trial set on the docket for January 11, 2010.  In this motion, the Contis stated, “The
primary purpose of a termination suit is to protect the child’s best
interest.  The best interest of a child
can only be attained when a court’s decision is as well-informed as
possible.”  However, the Contis made no
other argument and presented no affidavit or evidence in support of a finding that
a continuance would be in the best interest of E.C.  Because the record does not show that the
Contis met the statutory requirements for a continuance until after the
criminal trial, the trial court did not abuse its discretion by denying the January
11, 2010 motion for continuance.

          We
overrule the Contis’ second issue.

Improper Arguments

In their fourth issue, the
Contis contend that the counsel for DFPS and counsel for E.C. made improper statements
and remarks not in evidence that implied that Michael was convicted of sexually
abusing a child.

 

A.  
     Applicable Law

The control of counsel during a trial
rests within the sound discretion of the trial court, and a reviewing court
will not interfere unless it is clear that the trial court abused its
discretion.  Mandril v. Kasishke, 620 S.W.2d 238, 247 (Tex. Civ. App.—Amarillo
1981, writ ref’d n.r.e.).  A trial court
abuses its discretion when it acts in an arbitrary or unreasonable manner or if
it acts without reference to any guiding rules or principles.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985).  To obtain reversal of a judgment on the basis
of improper jury argument, a complainant must prove (1) an error (2) that was
not invited or provoked, (3) that was preserved at trial by a proper objection,
motion to instruct, or motion for mistrial, (4) and that was not curable by an
instruction, a prompt withdrawal of the statement, or a reprimand by the trial
court, and that (5) the argument by its nature, extent, and degree constituted
reversibly harmful error.  Id. (citing Standard Fire Ins. Co. v. Reese, 584 S.W.2d 835, 839 (Tex. 1979)).  Reversal is proper only upon a showing that
“the probability that the improper argument caused harm is greater than the
probability that the verdict was grounded on the proper proceedings and evidence.”  Reese,
584 S.W.2d at 840.

To obtain
reversal, the Contis must first prove “an error” that was not “invited or
provoked.”  See id.  Counsel must confine the argument strictly to
the evidence and to the arguments of opposing counsel.  See
Tex. R. Civ. P. 269(e).  A litigant is entitled to have his counsel
argue the facts of the case to the jury. 
Clark v. Bres, 217 S.W.3d 501,
510 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing Tex. Sand Co. v.
Shield, 381 S.W.2d 48, 57–58 (Tex. 1964)).  Trial counsel may properly discuss the
reasonableness of the evidence as well as the probative effect, or lack
thereof, of the evidence.  Id. 
This extends only to the facts and issues raised by the evidence
admitted under the rulings of the trial court.  Id.  In addition, attorneys may argue reasonable
deductions and inferences from the evidence properly before the jury.  Id.
(citing Mundy v. Shippers, Inc., 783
S.W.2d 743, 745 (Tex. App.—Houston [14th Dist.] 1990, writ denied)).  Trial counsel should be allowed wide latitude
in arguing the evidence and the reasonable inferences from the evidence to the
jury.  Id. (citing Anderson v.
Vinson Exploration, Inc., 832 S.W.2d 657, 667 (Tex. App.—El Paso 1992, writ
denied)).  Criticism, censure, or abuse
of counsel is not permitted.  See Tex.
R. Civ. P. 269; Jones v. Republic
Waste Servs. of Tex., 236 S.W.3d 390, 401 (Tex. App.—Houston [1st Dist.]
2007, pet. denied).  Appeals to passion
and prejudice are improper.  See Tex.
R. Civ. P. 269; Jones, 236
S.W.3d at 401.  Generally, an adverse ruling
is required to preserve an issue for appeal. 
Arias v. Brookstone, L.P., 265
S.W.3d 459, 467 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing Tex. R. App. P. 33.1(a)).

 

B.              
Analysis of Comments During Trial Proceedings

The Contis specifically
mention four examples of alleged improper “argument” during the trial
proceedings.  These examples are not
“arguments” by an attorney, but rather concern evidence admitted during the
trial.[3]  None of these examples are preserved for review because there
was no objection on the ground that they constituted an improper argument and
no ruling by the trial court.  See Jones, 236 S.W.3d at 401.  The Contis’ counsel objected on the grounds
of assuming facts not in evidence, relevance, and improper admission of a
criminal conviction, but no objection was made on the ground that the statement
was an improper argument.  

C.      Analysis of Comments during Closing
Argument

The Contis
specifically mention two examples of alleged improper argument during closing
arguments.  

In the first example, the
Contis’ counsel objected to E.C.’s counsel pointing to Michael and saying he
sexually abused a child.  The Contis’
counsel asserted that this fact was not in evidence.  The trial court overruled the objection.  The record shows as follows: 

[E.C.’s Counsel]   We’ve already given you the evidence.  We all know what happened and we all know
that she failed to protect her daughter, her oldest daughter.  Do you think she’s going to protect her
youngest daughter?  She doesn’t
care.  I’m sorry, ladies and gentlemen,
it’s sad, it’s horrible but there are people in this world who don’t care about
their children.  They just don’t
care.  They put their own needs above
others.  She told Lori Warren, Michael is
my life and without Michael I wouldn’t have a family.  Excuse me? 
Excuse me.  You have
children.  That is who comes first, not
your husband, not anybody else in the world. 
You protect your babies.  That’s your
job.  That’s your duty.  That’s your obligation.  And when you fail to do that we end up in
courtrooms like this with a jury, and we have to have 12 people who will stand
up and say, done, we’re all done.  You
failed to protect.  You sexually abused a
child and you know what happened - -

 

[Contis’ counsel]  Objection, your Honor.  She’s
pointing at my client saying he sexually abused a child.  That is not in evidence.

 

The Court:            I
overrule the objection.

 

In the second example, the
Contis’ counsel objected and said that there was no evidence that Michael
sexually abused M.S.

[DFPS’s counsel] Do not ruin Rainbow Conti’s life. 
Rainbow Conti had a choice.  She
had a choice.  [DFPS] told Rainbow Conti
she could move out of the house, get a job, do anything to get away from
Michael Conti and then she could have her children returned.  She was unwilling to do that.  She had that choice, not E.C.  So what about E.C.’s life?  That’s what’s important to me.  [DFPS] is asking you terminate the Contis’
rights to E.C. because we, unlike Ms. Conti, do not want to wait for Mr. Conti
to sexually abuse this child too.  He’s
already abused, sexually abused M.S. - - 

 

[Contis’ counsel]  Objections.  There’s no
evidence that he sexually abused M.S.

 

[DFPS’s counsel] Your Honor, I’m basing my - - 

 

The Court:            I’m
going to overrule the objection.  Tell
you ladies and gentlemen, you heard the testimony that was given in this
courtroom.  It is up to you to decide who
you believe and what you believe.

 

[DFPS’s counsel] In addition to the more recent sexual abuse of a child there was
deferred adjudication for abuse of another child.  I don’t want to wait for that to happen to
E.C.  We’re asking that you spare E.C.
from the experiences M.S. has been through. 
Spare E.C. from memories like the ones M.S. will have forever.  To spare E.C. from effects that sexually
abused children suffer from, such as post-traumatic stress disorder, and to
terminate the Contis’ rights to E.C. so that she will not be in danger of
sexual abuse and she will be raised in the safe home that she deserves, the
safe home that her mother was unwilling to provide her with for over 14 months
in this case.

 

An examination of the entire
record demonstrates that the evidence admitted at trial was sufficient for the
jury to have found that Michael had sexually abused M.S.  M.S. testified during the trial that Michael
sexually abused her, and other witnesses testified that Michael admitted the
sexual abuse.  Therefore, the trial court
did not abuse its discretion in allowing the statements, as trial
counsel is allowed wide latitude in arguing the evidence and the reasonable
inferences from the evidence to the jury. 
See Clark, 217 S.W.3d at 510 (citing Anderson, 832 S.W.2d at
667).    

We overrule the Contis’ fourth issue.

 

Conclusion

We affirm the judgment of
the trial court.

 

Elsa Alcala

                                                                   Justice


 

Panel consists of Justices Jennings, Alcala,
and Sharp.

 











[1]           The trial court also
terminated Rainbow’s parental rights to her daughter M.S.  That order is not at issue in this appeal.





[2]           The
Contis have one sentence in the argument section of their brief that states,
“The [Contis] were unable to pay for or otherwise retain an attorney until
their trial counsel agreed to represent them pro bono late in the afternoon of January 8, 2010.”  To support this, the Contis cite to the
Clerk’s Record at pages 96 to 98 and volume 3 of the Reporter’s Record at pages
3 to 4.  Neither of these record
references contains any information concerning the Contis financial ability but
only address the issue of Conti’s counsel being hired on the afternoon of
January 8, 2010.

 





[3]           Appellant
contends the following statements during trial were improper:

 

[DFPS Worker]         Yes,
ma’am.

 

[E.C.’s Counsel]       Do
you believe by going and knocking on the doors in the neighborhood and asking
the neighbors if they knew about it that it might embarrass and humiliate this
child?

 

[DFPS Worker]         Yes.

 

[Contis’ Counsel]     Objection.  Objection, your Honor.  She’s assuming facts that are not in
evidence.  My clients have been accused
of something.  She’s saying that they did
it already.

 

            Appellant also challenges the
following testimony:

[E.C.’s Counsel]       When
did you hire counsel for those charges that are against you, immediately or did
you take awhile to do that?

 

[Michael]                   Probably
a week or two after the kids were taken, because we weren’t getting any
responses from [DFPS].

 

[E.C.’s Counsel]       I’m
talking about the criminal attorney that represents you?

 

[Michael]                   Now?

 

[E.C.’s Counsel]       Now.

 

Furthermore, appellant complains about testimony as
follows:

 

[E.C.’s Counsel]       If
this jury terminates the parental rights of Michael Conti and Rainbow Conti
what are your thoughts on allowing Rainbow Conti continued supervised
visitation of E.C.?

 

[Lori Warren]           I
would have to
-- I don’t know.  There’s not a book out there on this.  I’d have to actually take guidance from her
therapist and possibly [DFPS].  I don’t
know how this was handled after that.

 

[E.C.’s Counsel]       But
you wouldn’t be opposed to it if they felt it was in her best interests?

 

[Lori Warren]           If
it was in her best interest, then, yes.

 

Finally, appellant points out the following testimony:


 

[E.C.’s Counsel]       If
this jury terminates your brother’s parental rights to E.C., are you going to
believe M.S. was sexual assaulted by your brother?  Yes or no, ma’am.

 

[Contis’ Counsel]     Objection,
your Honor.  She’s asking about a
criminal - - she’s referring to a criminal conviction.  This is a civil case.

 

. . . .

 

[E.C.’s Counsel]       If
this jury terminates your brother’s parental rights are you going to believe
that M.S. was sexually assaulted by your brother?

 

[Ramos]                     No.  Because I don’t believe the two equal - -